(No. 33031.—

GEORGE ELEOPOULOS *et al.,* Appellants, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed May 24, 1954—Rehearing denied July 13, 1954.*

LEVISOHN & LEVISOHN, of Chicago, (ARTHUR A. LEVI-SOHN, and WILLIAM J. CORRIGAN, of counsel,) for appellants.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and ARTHUR N. HAMILTON, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Upon the certification of the circuit court of Cook County that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal, (Ill. Rev. Stat. 1953, chap. 110, par. 199,) we review here a judgment of the trial court which holds, first, that the Chicago zoning ordinance, as amended, is valid and constitutional as applied to appellants' property, and, second, that appellants failed to prove they enjoyed a nonconforming use established prior to zoning regulations.

Quite briefly, the facts show that during the spring and summer months, appellant George Eleopoulos operates what is described both as a "mobile kitchen" or as a "hot-dog stand" on an otherwise vacant lot situated at the southwest corner of Montrose Avenue and Marine Drive in the city of Chicago. The land is owned by Brunhild Towers, Inc., a corporation, (coappellant here,) which leases to Eleopoulos. Since 1923, when the city of Chicago first enacted comprehensive zoning regulations, the property in question has been zoned as a residential district for apartment house use and at no time have the regulatory ordinances permitted the use to which appellants seek to put their land. While it is a point of dispute, later discussed, as to how long Eleopoulos has operated a pushcart, mobile kitchen, or hot-dog stand from the premises, it appears that in June, 1952, some controversy developed and as a result appellants filed a complaint in the circuit court seeking, through a declaratory judgment, relief from the operation of the zoning regulations. That court's judgment, adverse to their contentions, has led to this appeal.

Appellants do not attack the constitutional validity of the zoning regulations generally, nor do they contend that it was improper to classify the area in question for residential use. They argue, however, that the restriction placed upon the use of their land is an unreasonable and arbitrary exercise of the police power for ·the reason that the elimination of the use they seek from a residential district has no real or substantial relation to the public health, safety, morals or general welfare. For its part, the city of Chicago, the appellee, contends that the use of the premises for a hot-dog stand will adversely affect the value of residential property in the neighborhood, will constitute an incompatible use, and will increase traffic hazards in the vicinity; all of which are consequences directly adverse to the public welfare and which conditions zoning regulations are designed to obviate.

It has long been recognized in this State that constitutional guarantees of private rights are subject to the qualification that they may be cut down by governmental agencies acting under the police power of the State. It is under this concept that zoning ordinances have been upheld; however, to justify an invasion of private rights as a valid exercise of the police power, it must be shown that the power was exercised for the preservation of the safety, health, morals or general welfare of the public. The legislative determination of what is a proper exercise of the power is not conclusive and whether the means employed have a real, substantial relation to the public health, comfort, morals, safety or welfare, or are unreasonable and arbitrary, is a question subject to review by the courts. In ascertaining whether a particular zoning ordinance is in the public interest, courts must, of course, determine each case upon its own particular facts. (*Zilien* v. *City of Chicago,* 415 Ill. 488; *Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91; *Galt* v. *County of Cook,* 405 Ill. 396; *Dunlap* v. *City of Woodstock,* 405 Ill. 410.) The general scheme of zoning may be valid, yet, when applied to a particular piece of property and a particular set of facts and circumstances it may be so arbitrary and unreasonable as to result in a confiscation of the property. In that situation, as applied to the disputed real estate, the ordinance is void. *Village of La Grange* v. *Leitch,* 377 Ill. 99; *People ex rel. Kirby* v. *City of Rockford,* 363 Ill. 531.

The determinative issue in this case, therefore, is whether the restrictions contained in the Chicago zoning ordinance, as amended, are arbitrary and unreasonable when invoked to prohibit appellants' use of their corner lot for a mobile hot-dog kitchen.

Evidence introduced by both parties establishes conclusively that the area in question is almost exclusively residential in character being predominated by large apartments and flat buildings. It is bounded on one side by a

park and by a park-like development on another, and there is little evidence, if any, of anything within or near the area which detracts from its residential character or desirability for that purpose. Even admitting these facts to be true, appellants contend that there is no showing that the presence of the mobile kitchen in the area during the summer months has any real or substantial relation to public health, safety, morals or general welfare. We find, however, that a city planning expert, who described the area as being ideally suited for residence purposes, testified that a commercial enterprise of this nature detracts from the liveability of the area by causing people and vehicles to congregate at the stand and that patrons parking on the through street which passes in front of the stand, create traffic annoyances and hazards. While appellants seek to minimize the effect of such evidence, we think it serves to demonstrate that there are considerations of public safety and welfare which prompted the municipal legislators to exclude commercial enterprises of this nature from a residential district.

In *Village of Euclid, Ohio, v. Ambler Realty Co.* 272 U.S. 365, 71 L. ed. 303, when stating that the law of nuisances could be consulted for the helpful aid of its analogies in the process of ascertaining the scope of zoning powers, the court had this to say, (p. 388) : "Thus the question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined, not by an abstract consideration of the building or of the thing considered apart, but by considering it in connection with the circumstances and the locality. * * * A nuisance may be merely a right thing in the wrong place,—like a pig in the parlor instead of the barnyard. If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." And so it is

in the present case. While appellants' hot-dog stand may be an innocuous commercial use as compared to others, it cannot be said that its exclusion from a residential district passes the bounds of reason or that the end which the city had in view was not sufficient to justify such exclusion. Apart from the congregation of people and traffic hazards referred to, photographic evidence introduced reflects that the presence of the hot-dog stand, eight feet long, four feet wide and approximately seven feet high, is entirely incompatible with the area which surrounds it. The result could only be a diminishing effect on the desirability of the area for residential purposes and a corresponding decrease in property values, the very things which zoning regulations seek to preserve. While appellants' business is, of course, perfectly legitimate, it is our conclusion that the zoning regulations which exclude it from a residential area are reasonable and in the public interest.

Next to be considered is whether, under the evidence, the use of the property by appellant Eleopoulos is, by virtue of existing prior to the enactment of zoning regulations in April, 1923, a legal nonconforming use. Testifying in his own behalf, said appellant related that he had come to Chicago from Greece in January, 1921; that he worked for a candy maker for a few months, then in May, 1921, started selling hot dogs from the disputed land and has done so seasonally each year since; that he first sold only from a box, then from a pushcart and then from his mobile kitchen; that he paid rent to nobody at first, but later performed services for and paid cash to one Olson whom he had not seen since 1940; and that he later paid rent to the Brunhild interests. His presence on the premises with a pushcart in 1921 or 1922 was corroborated by George Geinakakis, a produce dealer who sells some supplies to appellant Eleopoulos, and by one George Parker, who stated that he first became acquainted with said appellant in 1921 or 1922, when the witness went fishing at

nearby Clarendon Beach, and that Eleopoulos then sold hot dogs and popcorn from a pushcart located on the same vacant lot as the present mobile kitchen.

As opposed to appellants' witnesses, James T. Igoe, a real-estate man who was familiar with the neighborhood for about thirty years, testified for appellee that there had been no mobile kitchen, cart or contrivance of any kind on the disputed land up to 1947, although there were peddlers with carts on the north side of Montrose Avenue directly north and across the street from the property in question. Arthur H. Kvale, a zoning investigator, who was acquainted with the area since 1918, and visited it in 1924 or 1925, at which time there were no paved roads or sidewalks, testified that he did not then see anyone operating a cart or kitchen on the premises. John Stumfoll, a rebuttal witness called by appellants, testified that he had helped Eleopoulos sell merchandise from both a cart and a stand on the premises between the years 1937 and 1951. When this witness was cross-examined he testified he met appellant Eleopoulos in 1922 at which time said appellant was selling peanuts in Grant Park. Following this, Eleopoulos returned as a witness and admitted that he had sold peanuts in Grant Park during 1922 and 1923, but stated he left someone else in charge of the stand at Marine and Montrose when he did so.

It may be seen that the evidence on the issue is greatly in conflict and that its determination lies chiefly in ascertaining the credibility of the witnesses. When testimony is contradictory, it is well established that, in a trial without a jury, the determination of the credibility of witnesses and the weight to be afforded their testimony are matters for the trial court and its findings will not be disturbed unless they are manifestly against the weight of the evidence. (*Wynekoop* v. *Wynekoop,* 407 Ill. 219; *Schnepper* v. *Ashlock,* 404 Ill. 417.) Although appellants charge Igoe with bias and now raise matters as to Kvale's testimony

which more properly would have been the subject of cross-examination, we find nothing in the evidence or argument which impels us to disturb the finding of the trial court that appellants failed to prove a legal nonconforming use.

Appellant Eleopoulos also makes a point of argument that he proved his eligibility for a food dispenser's license. Neither the judgment appealed from nor the notice of appeal reflect that such matter was decided by the trial court; thus the issue is not properly before us.

The judgment of the circuit court of Cook County is accordingly affirmed.                    *Judgment affirmed.*