Grace Michna, Plaintiff, Counter-Defendant, Appellee, v. Mildred May, et al., Defendants, Counter-Plaintiffs, Appellants, and Western National Bank of Cicero, as Trustee Under Trust 1413, Defendant-Appellant.

Gen. No. 51,427.

First District, First Division.

February 20, 1967.

Judson L. Parker, Holland F. FlaHavhan and Stanley Werdell, of Chicago, for all appellants.

L. Louis Karton and Marovitz, Powell & Pizer, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Grace Michna, widow of Edward N. Michna, filed a complaint against Mildred May and Martha Durrie, the deceased husband's sisters, to set aside a land trust alleged to be in fraud of her marital rights. The defendants filed a counterclaim for an accounting of the rents by plaintiff. The matter was referred to a Master in Chancery who found in favor of the plaintiff on all issues. Objections and exceptions were filed to the Master's Report and overruled, and a decree was entered setting aside the conveyance as being null and void, declaring the plaintiff to be the owner of the property and denying the counterclaim. A direct appeal was taken to the Supreme Court in which the defendants asserted that their constitutional rights to due process of law and to the equal protection of the law had been violated and the appeal was transferred to this court.

Our first consideration is the procedural course of the hearing conducted by the Master. The defendants' initial contention is that the Master was not impartial and his conduct of the proceedings was manifestly unfair.

The record shows that on June 8, 1962, the proceedings commenced before the Master. On June 11, 1962, a second hearing took place, proofs were closed and the Master prepared his Report in favor of the plaintiff. The Report was not filed as new counsel for the defendants requested leave to reopen proofs on February 4, 1963, which was granted by Judge Lupe. Hearings were resumed before the Master on January 29, 1964, on February 3rd and 4th, March 4th, 5th, 6th, 19th, 20th, and on April 8th.

At the April 20th, 1964, hearing the Master told the defendants that on May 1, 1964, he was moving into a

new suite in the same building and that plaintiff's counsel, Mr. Karton, was also a tenant in the same suite. He informed the parties that his sublease was with a firm of attorneys who also subleased space to Karton and that other than being in the same suite of offices he and Karton did not share any services and did not have any mutual interests. When the hearings resumed on May 8th, defendants' counsel stated that in view of the fact that the Master shared space in the same suite with plaintiff's counsel his clients do not believe they would receive a fair trial and objected to the Master continuing to preside. The hearings were discontinued, the respective counsel and the Master appeared before Judge Lupe who heard and overruled the objections and ordered the Master to continue. Evidence was heard by the Master on June 9th and June 22nd, and proofs were closed. The Master found the issues in favor of plaintiff. Objections to the Master's Report stood as exceptions and were overruled by the Chancellor who approved the Master's Report and entered a decree accordingly.

The defendants contend that the Master was not impartial and that his conduct of the hearings was manifestly unfair during the entire proceedings and his findings were biased and prejudiced, and that when he moved into the same suite of offices occupied by plaintiff's counsel he was disqualified from proceeding further as a Master. The record shows that the Master rendered his first Report in favor of the plaintiff in late 1962. After the proofs were reopened at the defendants' request extensive hearings were again held for many months before the Master moved to the new office space.

██ ██ The Chancellor heard the objections to the Master and ordered him to proceed with the hearings, commenting that "merely because a Master moves into a suite where one of the lawyers rents space will not change him." The Chancellor at the same time also heard exceptions to various rulings made by the Master which

were certified to him and sustained the Master. Whether the Master should have been removed was a matter within the sound discretion of the Chancellor. We cannot say on the basis of the record that he abused his discretion. Nor does the record show any bias or prejudice by the Master in his conduct of the hearings.

The major contention of the defendants is that the deceased had an absolute right to convey his real estate on the eve of his marriage to a trustee for life, with remainder over to his sisters, as long as he did not deprive his intended wife of any of her marital rights or breach a valid and enforceable contract.

The uncontradicted evidence establishes that the plaintiff and Edward N. Michna were married on January 23, 1956, and resided together on the premises in question until he died. A land trust agreement, number 1413, was entered into on January 10, 1956, by Edward Michna with the Western National Bank, whereby the trustee held title to the involved real estate for the benefit of Edward Michna, for life, with the remainder over to his sisters, Mildred May and Martha Durrie, equally. Edward N. Michna died on May 6, 1961, leaving a will dated May 6, 1956, naming the plaintiff as his sole beneficiary and executor.

Grace Michna, the plaintiff, testified that she and Edward Michna went steady for about one year before their marriage. She also testified over objections that when he proposed marriage and gave her a ring on December 19, 1955, he told her that he had a business and owned property and he would make her the sole beneficiary of everything he owned under his will; that she relied on his promises, accepted his proposal and ring and then they went to the Empire Room to celebrate the occasion; and that on January 23, 1956, they were married. She also stated that the involved premises consisted of two offices in front, one of which was used by the deceased, the deceased's machine shop in the

back and the apartment above in which they resided together until her husband passed away. She testified further that she first learned of the trust shortly after her husband's funeral from Frank Kryda, his attorney.

Mrs. Florence Mandarino, plaintiff's sister, testified that shortly after her sister's engagement in December, she and her sister visited Edward Michna in his apartment in the involved premises. She said he showed her the machine shop and told her what he did for a living. The witness was permitted over objection to testify that the deceased told her he was well fixed and would make a will giving all his property, including the real estate in question, to her sister.

Joseph Boucek and Frank J. Kryda also testified on behalf of the plaintiff. Mr. Boucek, the bank's trust officer, testified that neither the plaintiff nor the defendants were present when the trust agreement was executed. Mr. Kryda, the attorney for the deceased, testified that he prepared the will and the trust agreement. Over objection, he testified that the deceased did not discuss with him whether or not the plaintiff knew of the trust. When later called as a witness for the defendants he said, when he discussed the will with the deceased, he thought they discussed the trust, but didn't remember specifically what was said. He thought that when they discussed the trust the deceased told him he was contemplating marriage with the plaintiff.

The defendant, Mildred May, testified that when her family, her sister's family and plaintiff were present in her brother's apartment at Thanksgiving dinner and at Christmas in 1955, nothing was said about an engagement nor did plaintiff wear an engagement ring. She said she first knew they were getting married when her brother told her to come over and celebrate on the day of the event.

Martha Durrie, the other defendant, testified that she first met the plaintiff in November of 1954. In October,

1955, her brother told her he was planning to keep the real estate for himself and he wanted complete control of it. She also said that at Thanksgiving and Christmas of 1955 they were all together and nothing was said about an engagement. She testified further that on January 10th or 11th of 1956, she and the plaintiff were in her brother's apartment and he told them that he had entered into a trust agreement at the bank that day, putting the property in trust and named her and her sister as beneficiaries after his death; that "Grace said it didn't make any difference to her whatever he did was alright with her. There were no objections at all." She also said that while her brother and Grace were driving her home that evening he told her they were planning on getting married, but didn't set the date.

On cross-examination she was asked about her testimony at a deposition hearing held several years earlier when she testified as follows:

That on January 10th he said he put everything in trust and nothing further. He did not say anything about making her or her sister the beneficiaries. Grace was never present when he said he disposed of his property; that he didn't say how he disposed of his property or to whom he had left it in trust.

When asked if these answers were true she replied that they are incorrect, and that she didn't remember making them. On further cross-examination she said she never told her sister about the trust.

It is contended by defendants that the Master erred in allowing the plaintiff, her sister and Kryda to testify over objections to conversations with the deceased outside the presence of defendants and that said conversations comprise the totality of plaintiff's case. In support they cite section 2 of the Evidence Act, Ill Rev Stats 1963, c 51, § 2, which provides as follows:

No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any habitual drunkard, or person who is mentally ill or mentally deficient, or as the executor, administrator, heir, legatee or devisee of any deceased person or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely: . . . .

 In the instant case the Bank was sued only as a trustee under a land trust and not in its capacity as trustee of any habitual drunkard, or mentally ill person, or as an executor or heir or any other prohibited category. We are of the opinion that the Evidence Act does not apply to the parties here because the nature of their respective claims does not bring them within that section of the act. Lasky v. Smith, 407 Ill 97, 94 NE2d 898.

The Master stated in his report and we agree that:

The sole and primary question before the Court is whether the transfer of the property hereinabove described to the Western National Bank of Chicago, as Trustee, under Trust No. 1413, dated January 10, 1956, was a fraud upon the marital rights of the plaintiff.

The Master found from the evidence that the deceased entered into the trust agreement thirteen days before the marriage on January 23, 1956, that it was actually on the eve of marriage and he recommended that it be set aside and the plaintiff be declared to be the owner of the involved property.

289

■ In Moore v. Moore, 15 Ill2d 239, 241, 154 NE2d 256, the Supreme Court, in reversing a dismissal of a complaint seeking to set aside a deed executed ten months before the marriage to the deceased's son and two daughters, on the charge that it was fraudulent and void as to marital rights stated:

> It is the settled law in this State that a voluntary conveyance by either party to a marriage contract of his or her real property, without the knowledge of the other and on the eve of marriage, is a fraud upon the marital rights of the other party, and such conveyance may be set aside as fraudulent and void as against the party whose marital rights are precluded thereby. Bozarth v. Bozarth, 399 Ill 259; Dunbar v. Dunbar, 254 Ill 281; Daniher v. Daniher, 201 Ill 489.

■ In Lill v. Lill, 18 Ill2d 393, 398, 164 NE2d 12, the court said:

> While there can be no arbitrary demarcation as to time between fraudulent and valid transfer, the time at which a man transfers his property before marriage is material in determining whether the conveyance can be deemed a fraud on the future wife's marital rights.

■ We are of the opinion that the instant case is governed by the Moore and Lill cases and that the Master correctly concluded from the evidence that the conveyance was a fraud upon the marital rights of plaintiff.

■ ■ We must consider, however, the defendants' further contention that the plaintiff failed to prove by clear and convincing evidence that she had no knowledge of the trust prior to her husband's death. The plaintiff testified that she resided in the premises from the time of her marriage until her husband's death and did not know of any trust created by her husband for said prop-

erty until after his funeral. The deceased's attorney testified that when the trust was prepared by him at the deceased's request no mention was made that plaintiff had knowledge of the trust and he thought the deceased told him he was contemplating marrying the plaintiff at the time. Joseph Boucek, the vice president of the Bank, testified that the deceased came alone when the trust was executed, and he Boucek had not informed the plaintiff of the trust. The only witness to testify that plaintiff had such knowledge and expressed no objections to it was the defendant, Martha Durrie, which testimony was in conflict with her deposition testimony. Her sister, defendant Mildred May, who often saw her brother, admitted she didn't know of any trust agreement until some time after the funeral. It was established that the voluntary trust was created in contemplation of marriage which took place about thirteen days thereafter without the knowledge of plaintiff which is prima facie a fraud upon plaintiff's marital rights and the burden was upon the defendants to establish its validity. Lill v. Lill, 18 Ill2d 393, 164 NE2d 12. The Master properly found that the defendants failed to produce evidence to support this burden.

The defendants also argue in their reply brief that:

It is one thing for the defendants to admit the marriage and the conveyance on the eve of the marriage and quite another thing to admit the charges of fraud and conspiracy which the defendants have not done. Plaintiff admits that in addition to the transfer and the marriage, it was her duty to prove her non-consent. There is no credible evidence of her non-consent. She was totally impeached as a credible witness and there is no corroboration as to that element from unimpeached, credible witness. Consequently, by her own admission she has not established her case.

 Whether testimony is credible or contradictory or whether it is impeached are generally matters for the trier of fact and its findings will not be disturbed unless they are manifestly against the weight of the evidence. Eleopoulos v. City of Chicago, 3 Ill2d 247, 120 NE2d 555. The Master heard the evidence, saw and listened to the witnesses and made his recommendations to the Chancellor who approved the Master's Report and in a decree found in favor of plaintiff. In such case it is the province of the Master in the first instance to determine the facts and, while his findings of fact do not carry the same weight as a jury, nor a Chancellor where the witnesses have testified before him, his findings are entitled to due weight on review of the cause and a reviewing court is not justified in disturbing them unless they are manifestly against the weight of the evidence. Stowell v. Satorius, 413 Ill 482, 109 NE2d 734. We find that the decree is supported by the evidence and see no basis to find it was against the manifest weight.

 Various other grounds are urged for reversal, but we do not consider it necessary to pass upon them as the grounds already considered are decisive of the case. A reviewing court will not consider questions or contentions which are not essential to the determination or final disposition of the case before it, or of which will serve no beneficial purpose to the litigants. ILP, Appeal and Error, § 631.

For the reasons stated the decree of the Circuit Court is accordingly affirmed.

Decree affirmed.

MURPHY, P. J. and ADESKO, J., concur.