WALTER PLESNIAK, Plaintiff-Appellee, v. KENNETH F. WIEGAND, Defendant-Appellant.

(No. 60612;

First District (1st Division)—September 2, 1975.

924

Garretson & Santora and Torshen, Fortes & Eiger, Ltd.; both of Chicago (Jerome H. Torshen and Maria A. Elden, of counsel), for appellant.

D. Varraveto, Jr., and Robert P. Brandenburg, both of Chicago (Joseph E. Kurland, Jr., of counsel), for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This action was brought to recover damages arising out of a vehicular collision allegedly caused by the negligence of Kenneth F. Wiegand. The court, sitting without a jury, found for the plaintiff, Walter Plesniak, and entered a judgment for damages in the amount of $710. The defendant, appealing, asks that the cause be remanded for a new trial or, in the alternative, that the amount of damages awarded be reduced to $285. The defendant raises four issues on appeal: (1) the trial court abused its discretion in denying defendant's motion for a stay of proceedings pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. App. § 501 et seq. (1970) ); (2) there was insufficient evidence to establish that the defendant was the driver of the car involved in the collision; (3) there was insufficient evidence to establish that the defendant's car struck the plaintiff's truck, causing damage; and (4) there was insufficient evidence to establish the amount of damages suffered by the plaintiff.

The plaintiff, who owned the truck involved in the collision, and Stephan Gracz, the driver of the truck, were the only witnesses who testified. Both were called by the plaintiff. The defendant was not present at the trial, and his attorney did not call any witnesses.

The driver of the truck testified that while he was preparing to exit a parking lot on to Dixie Highway (a north and south highway in Hazelcrest), he observed no nearby vehicles approaching on the highway. He did notice, however, a sports car in the same parking lot which was proceeding toward an exit 20 feet south of the exit he was using. The truck driver then pulled out of the parking lot and turned south on Dixie Highway. He heard a screech of rubber and observed the sports car accelerating at a great rate of speed as it turned north on to Dixie Highway. The truck driver stopped his truck, and the sports car collided with the truck behind the cab of the truck. The only portion of the truck which was extending into the northbound lanes at the time of the collision was the rear wheels. The sports car remained in the northbound lanes during the entire incident.

On cross-examination, the truck driver testified that he had no recollection of the name of the driver of the sports car. However, on redirect, after refreshing his recollection by examining a document described as

a police report, the witness testified that he remembered that the driver of the sports car was named Kenneth Wiegand. On recross, he testified that he had no recollection of the sports car driver's name independent of the document he had examined. The court then inquired whether he remembered the sports-car driver's name independent of the document and the witness said, "Yes."

Walter Plesniak then testified in his own behalf that "certain physical damage" had been done to his vehicle at the point where the sports car collided with his truck. He testified that he had a bill for $285 for the repair of that damage. Mr. Plesniak testified that the truck was used for rental purposes, and he was unable to rent the vehicle for five weeks after the occurrence. Upon this evidence, the court entered judgment for the plaintiff in the amount of $710 plus costs.

The defendant's first contention on appeal is that the trial court abused its discretion in denying the defendant's motion for a stay in the proceedings pursuant to section 201 of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. App. § 521 (1970)). The court's denial of the defendant's motion to stay the proceedings was entered the same day the trial was held. However, the court had granted the defendant's motions to stay the proceedings pursuant to the Soldiers' and Sailors' Civil Relief Act on three prior occasions. We feel it necessary to set forth the record concerning these prior stays in order to put the trial court's final order in perspective.

The plaintiff filed suit on May 5, 1969. On October 28, 1969, the defendant's attorney moved that the court stay the proceedings by placing the case on the military calendar. The defendant supported his motion with an affidavit signed by the defendant's mother which stated that the defendant was an officer on active duty in the army in Savannah, Georgia and that his "current term of service" would expire in November, 1971. The court granted the defendant's motion and placed the case on the military calendar and on the no progress call until December, 1971.

Shortly after December, 1971, the case was taken off the military calender and continued until March 1, 1972. On March 1, 1972, the defendant's attorney again moved to stay the proceedings, and the court again granted the defendant's motion by placing the case on the military calendar until November, 1972.

In November, 1972, the case was again removed from the military calendar. The case was continued several times, during which time the defendant's attorney submitted another affidavit signed by the defendant's mother dated December 30, 1972. This affidavit stated that the defendant was on active duty with the army in Colorado Springs, Colorado.

On January 2, 1973, the court ordered that the defendant notify his attorneys within 30 days as to the next date that he would be available for trial. Pursuant to this order the defendant wrote a letter to his attorneys which was presented to the court. The letter stated that due to the pressing demands of his position as commanding officer of a helicopter squadron stationed in Colorado, it would be "almost impossible" for the defendant to come to Chicago at the present time. The defendant stated in the letter that he, "may be visiting the Chicago area on or about 27 December 1973 to 1 January 1974." After receiving this letter the court, on January 30, 1973, continued the case until December 31, 1973, and placed the word "Final" on the order.

On December 31, 1973, the case was called for trial, and the defendant's attorney again moved to continue the case pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940. The defendant's attorney stated that the defendant was still on active duty in Colorado Springs, Colorado, and had not been in Illinois since the case was last called. The defendant's attorney said nothing concerning whether or when the defendant could be present for trial in the future. The court stated that it was of the opinion that the Soldiers' and Sailors' Civil Relief Act of 1940 did not require indefinite continuances, and that it could not understand why a commanding officer could not obtain leave to return to Illinois for a trial. The court therefore denied the defendant's motion for a further continuance and ordered the case to proceed to trial. The case was tried the same day without the presence of the defendant. The defendant's attorney was present and he cross-examined the plaintiff's witnesses. The defense did not call any witnesses.

The defendant contends that the court erred in denying the defendant's motion to continue the proceedings until a future date. The defendant argues that section 201 of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C. App. § 521 (1970)) requires that a court stay proceedings whenever a party's absence due to active duty in the military would materially affect his ability to prosecute or defend a suit he was a party to. The only discretion the court had, the defendant contends, was to determine whether the defendant's absence would have materially affected his ability to defend. Because the defendant was the alleged driver of the car and a witness to the occurrence, the defendant contends that his absence affected his ability to defend.

■■ If the defendant's view of the law is correct, then a party would only have to establish three elements in order to obtain a stay of proceedings pursuant to the Act: (1) the party is on active duty in the military; (2) the party is not or will not be present for the trial; and (3) the party's absence during the trial would materially affect his

ability to prosecute or defend. We are of the opinion that the defendant's view of the law is incorrect. A party must establish, in addition to the above three elements, that his military status is the proximate cause of his inability to be present for trial, in order to be entitled to a stay of proceedings pursuant to section 201 of the Act.

Section 201 of the Soldiers' and Sailors' Civil Relief Act of 1940 states that:

> "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereof may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." (50 U.S.C. App. § 521 (1970).)

It is clear from this language that a court is not required to grant a stay of proceedings unless the defendant's ability to defend was "materially affected *by reason of his military service.*" (Emphasis added.)

This same language in the Act was emphasized by the United States Supreme Court when it construed section 201 of the Act. The court stated:

> "The Act cannot be construed to require continuance on mere showing that the defendant was in Washington in the military service. Canons of Statutory construction admonish us that we should not needlessly render as meaningless the language which, after authorizing stays, says 'unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected *by reason of his military service.*'" (Emphasis added.) *Boone v. Lightner,* 319 U.S. 561, 565, 87 L.E. 1587, 1591, 63 S.Ct. 1223, 1226.

The court went on to cite a portion of the House Report on the Act which discussed section 201 of the Act, "This mere fact of being in military service is not enough; military service must be the reason for the defendant not meeting his obligations." House Report, No. 181, 65th Cong., 1st Sess., at 5.

The Court, in *Boone,* also rejected the contention our defendant is making that the only permissible issue a trial court may consider upon a motion for a stay under the Act is whether the defendant's absence would materially affect his ability to defend. In *Boone,* the trial court had denied defendant's motion for a stay under the Act on the ground

that the defendant there was using the Act as a shield to prevent the case from ever coming to trial. The Supreme Court upheld the trial court's order stating that the Act, "requires only that the court be of opinion that ability to defend is not materially affected *by military service.*" (Emphasis added.) (319 U.S. 561, 571, 87 L.E. 1587, 1594, 63 S.Ct. 1223, 1229.) The court went on to say that a party's absence may be the result of his military service or the result of an intention to avoid trial and that, "discretion is vested in the courts to see that the immunities of the Act are not put to such unworthy use." 319 U.S. 561, 575, 87 L.E. 1587, 1596, 63 S.Ct. 1223, 1231.

A trial court, therefore, may consider not only whether the party's absence would prejudice his rights in the case, but also whether the party's absence was caused by his military service or by other factors. This rule was followed in Illinois in the more recent case of *Slove v. Strohm*, 94 Ill.App.2d 129, 236 N.E.2d 326. In *Slove*, the court recognized that while the defendant was in the military service and his absence would prejudice his defense at trial, the defendant still, "must allege something more than his mere being in the military service." (94 Ill.App.2d 129, 132, 236 N.E.2d 326, 327.) The court upheld the denial of the defendant's motion for a stay pursuant to the Act. In doing so the court noted that defendant had made no indication as to when he would be available for trial in the future. Finding some balancing between the parties' rights must be arrived at, the court held that the trial court's denial of a stay was correct where the defendant had made no effort to assist the court in determining when the case could be disposed of.

The defendant in our appeal contends that *Slove* is inapplicable to our case, because *Slove* dealt with a matter which had to be resolved quickly; that of a paternity suit wherein child support payments would be determined. Our suit involves damages arising out of a vehicular collision, which the defendant contends does not require as speedy a resolution. In response to this contention, we must note that the instant matter was certainly not rushed to trial. The trial court did not deny any of the defendant's motions for continuances until some four and one-half years after the suit was filed. In *Slove*, the denial of the stay was upheld by the appellate court within one year after the filing of the suit in the trial court. Furthermore, there are a number of cases involving suits for damages arising out of vehicular collisions in which the reviewing court found that the denial of a motion for a stay under section 201 of the Act was the proper action for the trial court to take. *Tabor v. Miller* (3d Cir. 1968), 389 F.2d 645; *Graves v. Bednar* (1959), 167 Neb. 847, 95 N.W.2d 123; *Stalcup v. Ruzic* (1947), 51 N.M. 377,

185 P.2d 298; *Norris v. Superior Court* (1971), 14 Ariz.App. 183, 481 P.2d 553; *Swiderski v. Moodenbaugh* (D. Ore. 1942), 45 F.Supp. 790.

All of the above cases involving vehicular collisions examined whether the party requesting a stay in the proceedings because of military service had made a reasonable effort to be available for trial. These cases, in addition to *Boone* and *Slove*, considered a number of factors they felt were relevant in determining whether the person's absence was due to his military service or due to the lack of a reasonable effort to make himself available for trial. The factors these courts considered included: (1) whether the movant had made some statement as to when he could be available for trial (*Boone, Slove* and *Graves*); (2) whether the movant had attempted to apply for leave from the military (*Boone, Norris, Graves* and *Stalcup*); (3) the length of time which had transpired between the original filing of the suit and the movant's final motion for a stay (*Tabor* and *Graves*); and (4) the length of time during which the movant had notice of the upcoming trial date (*Boone*).

In the instant case, on the date the defendant made his final motion to stay the proceedings, the defendant's attorney made no statement as to when the defendant could be available for trial. Furthermore, at no time in the proceedings did the defendant allege that he had attempted to get leave from his military duties. Some four and one-half years elapsed between the date the suit was filed and the date the trial court denied the defendant's final motion for a continuance and brought the matter to trial. During the interim, the court had granted the defendant three continuances of considerable length. The third of these continuances deferred the cause to December 31, 1973, a date which corresponded to the time period during which the defendant stated in his letter that he might be in Chicago. This third continuance included the word "Final" and was entered on January 30, 1973, more than 11 months prior to the trial. The defendant, therefore, had very adequate notice of the time set for trial.

■■ We are of the opinion that the trial court could have properly found under these circumstances that the defendant had not made a reasonable effort to make himself available for trial. Therefore, the court did not err in denying the defendant's motion for a further continuance.

The defendant next contends that there was insufficient evidence to establish that the defendant was the driver of the sports car which allegedly collided with the plaintiff's truck. The driver of the truck testified on cross-examination that he could not recollect the name of the driver of the sports car. On redirect, after the truck driver was shown a document described as a police report, he testified that his recollection was refreshed and he remembered that the driver of the

sports car was named Kenneth Wiegand. On recross he stated he had no recollection of the sports-car driver's name independent of the police report. However, when the court then asked him whether he remembered the sports-car driver's name independently of the police report, he replied, "Yes."

■■ We are of the opinion that the trial court could have properly believed the truck driver's final statement on the matter, that he did remember the defendant's name independently of the police report. At most, there is a contradiction between the truck driver's answers to the two questions concerning whether he could remember the sports-car driver's name independently of the police report. Where a witness' testimony is contradictory it is for the court, when sitting as a trier of fact, to determine the credibility of that witness and to resolve the conflict. (*McDonald v. Industrial Com.*, 39 Ill.2d 396, 235 N.E.2d 824; *Eleopoulos v. City of Chicago*, 3 Ill.2d 247, 120 N.E.2d 555; *Michna v. May*, 80 Ill.App.2d 281, 225 N.E.2d 391.) The trial court, as the finder of fact, resolved this conflict in testimony in the plaintiff's favor, and we will not disturb the finding.

■■ The defendant's third contention is that the evidence was insufficient to establish that the defendant's car collided with the plaintiff's truck, causing damage. The truck driver testified that the car did collide with the truck at a point of impact "behind the cab of the tractor." At the time of impact, the truck driver testified, the truck was in the southbound lanes except for the rear wheels. The sports car through the impact remained in the northbound lanes. A collision would have been impossible based on this testimony, defendant contends, because the truck was in the southbound lanes while the sports car was in the northbound lanes throughout the alleged impact.

We do not believe such a conclusion must necessarily follow. The driver testified that the rear wheels of the truck were in the northbound lanes. The impact could have taken place at a point near the rear wheels, because the truck driver's testimony that the impact was at a point, "behind the cab of the tractor," could be taken to mean "anywhere on the truck behind the cab." Furthermore, the sports car could have struck a portion of the truck which was located in the southbound lanes and rebounded into the northbound lanes without any substantial portion of the sports car venturing into the southbound lanes. We find the defendant's third contention without merit.

The defendant's next contention is that there was insufficient evidence to establish the amount of damages the plaintiff suffered due to his alleged loss of the use of his truck because of the accident. The only evidence relating to the amount of damages was the following. The

plaintiff testified that there had been "certain physical damage to his vehicle" located at the point of impact of the defendant's car upon the plaintiff's truck, and that he had a $285 bill for the repair of that damage. The truck, the plaintiff testified, was used for rental purposes; it was at the time of the mishap rented to the person driving it that day, and the plaintiff was unable to rent the truck for five weeks following. Upon this evidence, the court entered a judgment in favor of the plaintiff in the amount of $710 plus costs.

The defendant contends that the amount of the judgment which exceeded $285 (the amount of the repair bill) must have been awarded for the plaintiff's loss of income due to his alleged inability to use or rent the truck for five weeks following the occurrence. The defendant contends that there was insufficient evidence to establish the amount of damages for the loss of the use of the vehicle because there was no evidence whether the vehicle was made inoperative by the collision, when the plaintiff took it to be repaired, how long the repairs required, whether the time taken to repair was reasonable, and whether anyone sought to rent the truck during the five-week period.

■■ Where a party loses the use of a vehicle while it is undergoing repairs for damage caused by another's negligence he may recover the value of the use of the vehicle while the owner is necessarily deprived of the vehicle. (*Trailmobile Division of Pullman, Inc. v. Higgs*, 12 Ill. App.3d 323, 297 N.E.2d 598; *Berry v. Campbell*, 118 Ill.App. 646.) However, in order to recover damages for the loss of the use of a vehicle under this rule a party must establish the period of time during which he was necessarily deprived of the use of the vehicle, and the value of the use of the vehicle during that time period. In the instant case the plaintiff only offered testimony that he "was unable to rent his vehicle for five weeks after the damage occurred." There was no testimony concerning whether the alleged damage was the cause of the plaintiff's inability to rent the vehicle or whether five weeks was a reasonable period of time for the completion of the repairs. Five weeks seems an unusually long period of time in light of the small repair bill of $285. We are of the opinion that there was insufficient evidence to establish what period of time, if any, the plaintiff was necessarily deprived of the use of the vehicle while it was undergoing repairs for damage caused by the defendant.

■■ Furthermore, there was no evidence to establish the value of the use of the vehicle. If it would have been feasible to rent a replacement while the truck was undergoing repairs, then the cost of renting a replacement would have been a reasonable measure of damages. (*Welter v. Schell,* 252 Ill.App. 586; *National Contract Purchase Corp. v. McCor-*

*mick,* 264 Ill.App. 63.) An alternative measure of damages which would have been proper is the loss of net profits suffered by the plaintiff's rental business which were necessarily lost while the truck was undergoing repairs. (*Koch v. Pearson,* 219 Ill.App. 468; *Alexander Schroeder Lumber Co. v. Merritt* (Tex. Civ. App. 1959) 323 S.W.2d 163.) However, there was no evidence concerning how much the truck rented for, what the cost of renting a replacement would have been, what net profits the plaintiff normally derived from the truck over a given period of time, or whether there were any customers which would have rented the truck if it had not been undergoing repairs. We find that there was insufficient evidence for the court to determine the value of the use of the vehicle while it was allegedly undergoing repairs for damages in the mishap. We are of the opinion that the evidence was insufficient to establish damages in the amount of $710, an amount which must have taken into account loss of income from the nonavailability of the truck.

■■■ We affirm both the court's denial of the defendant's motion for a continuance and the court's finding that the defendant's negligence was the cause of the injuries to the plaintiff's truck. However, we reverse and remand the cause for a new hearing on damages. Both the repair bill and the value of the use of the vehicle which the plaintiff necessarily lost while it was undergoing repairs may be considered in determining the amount of damages. In determining the value of the use of the vehicle which the plaintiff lost while it was undergoing repairs, the court should first determine what a reasonable time to repair the vehicle was. Thereafter, the court should determine the cost of renting a replacement (if renting a replacement was feasible) or the net profits the plaintiff would have lost during the reasonable period of time it would have taken to repair the vehicle or the time actually taken to repair it if this was less. The net profits lost should be based on either the plaintiff's normal income over a similar period which would be necessarily lost if the truck was unavailable or the business he in fact lost due to the loss of the use of the truck during that period of time, deducting from either of these measures the cost of operating the truck over that period of time.

Judgment affirmed in part, reversed in part and cause remanded in part with instructions.

EGAN and SIMON, JJ., concur.