523 So.2d 20 (1987)
Donald Wayne ROBERTS
v.
Jacqueline FUHR.
No. 57076.
Supreme Court of Mississippi.
November 12, 1987.
Rehearing Denied April 27, 1988.
*22 Carter Dobbs, Jr., Amory, for appellant.
Barry J. Walker, Roy O. Parker, Tupelo, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
Although efforts to accomplish the aims of the Uniform Child Custody Jurisdiction Act are well intended, courts of sister states may still hold conflicting results on jurisdictional questions. Such opposite results have been reached by the Chancery Court of Itawamba County and a court of similar jurisdiction in Rock Island County, Illinois, in a modification of a child custody and visitation decree. Donald Wayne Roberts, father of Donald Wayne Roberts, Jr., refused the mother, Jacqueline Roberts Fuhr, her visitation rights with their child in reliance on an Illinois decree. The Itawamba Chancery Court, finding that jurisdiction rested in its court, forfeited a ne exeat bond previously posted by the father and adjudicated the father in contempt. The Itawamba Chancery Court action is affirmed.
Donald Roberts, disagreeing with the bond forfeiture and contempt finding, appeals assigning as error:
(1) The chancery court erred in ruling that the Mississippi Court had jurisdiction.
(2) The chancery court erred in overruling the motions of appellant Donald Wayne Roberts who was serving on active duty in the United States Army to stay the proceedings pursuant to provisions of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.App. § 510 et seq.
(3) The chancery court erred in entering an order on November 12, 1985 finding appellant Donald Wayne Roberts in contempt of court after the Supreme Court obtained jurisdiction by appellants filing a petition for appeal on August 12, 1985 and a notice to court reporter to transcribe notes and designation of record on appeal on August 29, 1985.

I.
The factual situation in this case is necessarily detailed, evidencing proceedings in two states simultaneously after custody dispute arose. Donald Wayne Roberts (hereinafter Roberts) and Jacqueline Roberts Fuhr, (hereinafter Fuhr) were married on December 29, 1969, in Fulton, Mississippi. They had one child, Donald Wayne Roberts II, who was born August 2, 1971.
On August 5, 1975 the couple divorced in Itawamba County, Mississippi, the county of their residence. Custody of the minor child, Donald Wayne Roberts, was awarded to Fuhr, and Roberts was ordered to pay $150.00 per month as child support. During the summer visitation of 1978, the father took the child with him to Germany, where the child remained. After several confrontations concerning custody of the child, on July 15, 1983 a consent decree was entered between the parties providing:
(1) That Roberts had purged himself of all previous allegations of contempt.
(2) A material change in circumstances required that child support payable to Fuhr be increased to $175.00 per month.
(3) Roberts would have visitation rights for one month in the summer and on other specified dates.
(4) Roberts would pay Fuhr $500.00 in attorney's fees.
*23 (5) Roberts would post a ne exeat bond in the amount of $20,000 requiring full compliance with the consent decree.
On January 19, 1984, Roberts filed a motion for modification in the Itawamba Chancery Court alleging that material changes of circumstances adversely affecting the minor child had occurred and that the minor child, age 12, had expressed his desire to live with his father and that custody of the child should be awarded to Roberts.
On May 25, 1984, Fuhr answered the motion for modification denying that there had been any material change in the circumstances. She filed a cross-complaint alleging material changes in circumstances for herself, asking Roberts to pay $400 per month as child support and to pay all medical bills incurred by the minor child. On June 27, 1984, a final decree was entered ordering that:
(1) Roberts be awarded permanent care, custody and control of the minor child;
(2) Fuhr be awarded custody during two months of the summer, Spring or Easter holidays, and Christmas holidays of each year. She was granted other visitation as long as it did not adversely affect the child's education.
(3) Roberts was to pay Fuhr $300 per month during the two months visitation.
(4) Roberts was to pay for all medical bills incurred by the minor child.
(5) Roberts was to pay Fuhr $500 for her attorney's fee.
(6) The ne exeat bond of $20,000 was continued in order that Roberts fully comply with all provisions of the decree.
On May 13, 1985 Roberts filed a petition to modify in the Circuit Court of Rock Island County, Illinois under the Uniform Child Custody Jurisdiction Act of the State of Illinois, alleging that the child suffered physically and psychologically from visitation periods with his mother, that it would be in the best interest of the minor child to modify the two months summer visitation period with Fuhr and that the State of Illinois was the "home state of the minor child". Notice of hearing was sent to Mrs. Fuhr presumably in compliance with Illinois law.
On May 25, 1985, Fuhr filed a complaint for citation for contempt and forfeiture of the ne exeat bond required by the Itawamba Chancery Court against Roberts alleging that Roberts had filed a proceedings in the State of Illinois to modify the previous decree of the Itawamba County Chancery Court.
The record represents that on May 31, 1985 Judge David Dedoncker, Circuit Judge of the Fourteenth Judicial District of Rock Island County, State of Illinois entered an order finding that it should assume jurisdiction with respect to custody and modification pursuant to the Uniform Child Custody Jurisdiction Act of the State of Illinois, that the minor child and Donald Wayne Roberts had significant connections with the State of Illinois and that substantial evidence existed in Illinois concerning the best interests of the child and that there presently existed an emergency concerning the health and well-being of the child, mentally and physically, which dictated that jurisdiction be assumed. The court in its order enjoined Fuhr from contact with the minor child.
On June 18, 1985 a hearing was held in the Itawamba County Court on the complaint for citation for contempt and forfeiture of the ne exeat bond against Roberts. Roberts filed a motion to dismiss because the Illinois Circuit Court had assumed jurisdiction. His motion was overruled.
On June 24, 1985 Chancellor Malski ruled that a hearing had been held in Rock Island County, Illinois concerning the petition filed by Donald Wayne Roberts; that Honorable Joseph F. Beatty, Judge of that court, took the proceedings under advisement; that the Illinois Court would not assume jurisdiction and was convinced that the minor child was in need of immediate surgery to be scheduled in Illinois; and that if Roberts failed to deliver the child to Fuhr for visitation once the child was able to travel, the court would then deal with the complaint for citation for contempt and for forfeiture of ne exeat bond.
*24 Exhibits concerning the physical and psychological reports on the minor child were filed in the Itawamba Court alleging adverse effects on the child by visitation with his mother.
On July 29, 1985 Donald Wayne Roberts filed a motion for stay of proceedings under the Soldiers' and Sailors' Civil Relief Act, alleging that he was serving on active duty in the United States Army under orders that made it impossible for him to appear in court in Mississippi before September 1985, and that his ability to conduct his defense was materially affected by reason of his military service. This motion was overruled.
Also, on July 29, 1985 Fuhr filed in the Itawamba Chancery Court a petition to modify the decree and for citation of contempt against Roberts, alleging that the minor child had suffered physical and psychological problems while in the custody of Roberts and asking that custody be changed to her, that Roberts be required to pay $400.00 per month as child support, tuition and private schooling and all medical, dental and optical expenses of the child and a reasonable attorney's fee, and that the court find Roberts in contempt of court for violation of the previous decree of the court dated June 27, 1984.
On July 30, 1985, Honorable Joseph F. Beatty, Circuit Judge of the Fourteenth Judicial District of the State of Illinois, entered an order pursuant to the petition to modify filed by Roberts. Judge Beatty continued the matter generally, required the minor child to receive medical treatment as soon as possible and rescheduled the matter for further hearing after the minor had corrective surgery and had recovered fully.
On the same date in Mississippi, July 30, 1985, the Itawamba court ordered the $20,000 ne exeat bond forfeited to Fuhr, and judgment was entered against Roberts, Horace Roberts and Henry F. Rogers in the sum of $20,000 plus eight (8) percent per annum interest in costs if the minor child Donald Wayne Roberts, II was not delivered to Mrs. Fuhr on August 5, 1985. The matter of contempt was deferred until after August 5, 1985. On August 12, 1985 Roberts filed a petition for appeal.
On September 18, 1985 an opinion of Circuit Judge Joseph F. Beatty, Illinois, was filed. This opinion found that the Illinois Court had jurisdiction of Roberts and Fuhr and the minor child Donald Wayne Roberts II, under requirements of the Uniform Child Custody Jurisdiction Act of the State of Illinois, had been a resident citizen of the State of Illinois for over one year, that visitation by Fuhr, the natural mother, could not be carried out without psychological and physical damage to the minor child, that the child (14 years of age) had a strong desire to stay with his natural father and stepmother and never speak to or see his natural mother again, and that it was in the best interest of the natural father to continue with his custody and that visitation on the part of the mother be restricted to a supervised environment within the State of Illinois, Rock Island County.
On September 23, 1985, Roberts filed in the Mississippi proceeding his answer to the petition to modify the decree and for citation for contempt filed by Fuhr on July 29, 1985. The answer denied all the material allegations of the petition to modify and for citation for contempt and set out as an affirmative defense that the Chancery Court of Itawamba County, Mississippi had no jurisdiction for the reason that the Circuit Court of Rock Island County, Illinois, by orders entered on May 31, 1985, June 5, 1985 and August 28, 1985 assumed jurisdiction of this cause before the filing of the petition to modify decree and for citation for contempt filed by Fuhr.
On November 12, 1985, Itawamba County Chancery Court entered an order on the petition for citation for contempt of court filed by Fuhr ruling that:
(1) The purported modification of the decrees by the Illinois Court is null and void and invalid and of no effect;
(2) That defendant Roberts is in contempt of the court and should be committed to the Itawamba County Jail until he purged himself of the contempt by delivering *25 Donald Roberts, II to his mother for her visitation as the decree provided;
(3) Roberts should pay to Fuhr $300.00 as partial payment of her attorney's fees and costs;
(4) Roberts should pay a fine in the sum of $500 to Itawamba County, Mississippi for his willful contempt of court.
Roberts appeals the order of the Itawamba County Chancery Court.

II.
This appeal raises several questions. Initially this Court addresses the applicability of the Uniform Child Custody Jurisdiction Act.

A.
Since there is involved in this case the visitation rights of the mother with this child, does the Uniform Child Custody Jurisdiction Act (hereinafter UCCJA) apply? This answer comes quickly from the Uniform Act itself in Miss. Code Ann. § 93-23-3(c) (1972) which provides:
"Custody determination" means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person; ...
The conclusion is inescapable that the provisions of the UCCJA have to be addressed as this case is considered.

B.
The central question in this case, however, is whether the Mississippi Court had continuing jurisdiction to enforce its prior order under the Uniform Child Custody Jurisdiction Act. To answer this question, this Court first looks to the purposes of the Act.
Miss. Code Ann. § 93-23-1 et seq. (Supp. 1986) (adopted July 1, 1982) and Illinois revised statute, Chapter 40, § 2101 through 2123 (adopted September 11, 1979) constitute each state's adoption of the UCCJA. Purposes of the Act as noted in the Illinois revised statute, chapter 40, § 2102 are to:
(1) avoid jurisdictional competition in conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
(2) promote cooperation with the courts of other states to the end that custody judgment is rendered in that state which can best decide the case of the interest of the child;
(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;
(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
* * * * * *
(6) avoid relitigation of custody decisions of other states in this State to the extent to which the avoidance of such relitigation is feasible;
(7) facilitate the enforcement of custody judgments of other states;
(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and
(9) make uniform the law of those states which enact it.
Both Mississippi and Illinois specify with regard to jurisdiction that a court of each state has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the *26 child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationship; or
(c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs a, b, or c, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
Miss. Code Ann. § 93-23-5 (Supp. 1987). Specific guidelines under which a state court may modify a custody decree of another state court are specified in Miss. Code Ann. § 93-23-27 (Supp. 1986) and Illinois Revised Statutes, Chapter 40, § 2115. Miss.Code section reads as follows:
(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree, and (b) the court of this state has jurisdiction.
(2) If a court of this state is authorized under subsection (1) of this section and section 93-23-15 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section 93-23-43.
In the case at bar the father was successful in obtaining primary care and custody of his son, pursuant to a June 27, 1984 modification decree of the Mississippi Court. That decree specified that the mother was awarded visitation rights with Donald Wayne Roberts, II for two months beginning in the summer of 1985. The decree also required Roberts to post a $20,000 ne exeat bond requiring his continued compliance with the court's decree. Fuhr contends citing Kumar v. Superior Court of Santa Clara County, 32 Cal.3d 689, 186 Cal. Rptr. 772, 652 P.2d 1003 (1982) and Hamill v. Power, 487 So.2d 345 (Fla.App. 1st Dist. 1986) that it was improper for the Illinois Court to assume modification jurisdiction in this case, because the Mississippi Court continued to have jurisdiction of this case. The factors upon which the mother relies are: (1) Fuhr continues to live in Mississippi, and assert her custody/visitation rights under the Mississippi decree; (2) the Mississippi Chancery Court continues to assert its jurisdiction, among other ways, by way of a standing ne exeat bond; and (3) the child still has significant connections with the state; (4) Roberts bases his custody rights under the same Mississippi order that Fuhr relies upon and litigates in the Mississippi courts.
Fuhr also cites Miss. Code Ann. § 93-23-11 (Supp. 1987) which prohibits a court from asserting jurisdiction, if at the time of filing a petition, a proceeding concerning the custody of the child was pending in a court in another state.
On the other hand, Roberts contends that the filing of his petition in the Illinois Court in May of 1985 was in good faith and that there was no ongoing proceeding in the Mississippi court.
In support of his argument that Illinois properly assumed jurisdiction, Roberts cites Walker v. Luckey, 474 So.2d 608 (Miss. 1985) (Mississippi Supreme Court recognized Florida modification decree basing *27 its decision in large part upon Florida having become the "home state" of the father and child by residing in Florida for over six months; and Siegel v. Alexander, 477 So.2d 1345 (Miss. 1985) (Texas was proper jurisdiction because children resided in Texas for more than one year and practically all witnesses and all evidence of any substantial changes adversely affecting the children's future care, protection and training lay within the borders of Texas). Miss. Code Ann. § 93-23-5(1)(a) (1972).
Since the filing of the case at bar this Court has addressed several cases under UCCJA. Hobbs v. Hobbs, 508 So.2d 677 (Miss. 1987); Laskosky v. Laskosky, 504 So.2d 726 (Miss. 1987); In the Interest of K.M.G., 500 So.2d 994 (Miss. 1987); Brown v. Brown, 493 So.2d 961 (Miss. 1986); Hill v. Hill, 481 So.2d 227 (Miss. 1985); Owens v. Huffman, 481 So.2d 231 (Miss. 1985).
However, the foregoing cited cases are all distinguishable factually by the existence of a ne exeat bond in this case, which gives the Mississippi court continuing jurisdiction. Factors supporting the continuing jurisdiction in Mississippi include the fact that Donald Roberts was still subject to a ne exeat bond to comply with the provisions of the modification judgment of June 27, 1984 and that the Mississippi court exercised continuous and ongoing jurisdiction of the matter with full notice and appearance by all principals.
The ne exeat writ and bond are designed to insure a "personal performance" for an "effectual preservation and enforcement of the rights of the complainant in a cause." Griffith, Mississippi Chancery Practice, 2d Ed. 1950, § 469, p. 504. Miss. Code Ann. § 9-1-19 (1972). Clearly in this cause, a ne exeat writ and bond was the proper insurance to effect Robert's amenability to the "processes of the court during the pendency of the cause ..." Ibid.
There had not been a cessation of the viability or authority of that bond and the chancery court's exercise of jurisdiction in this case over the parties or the subject matter. Therefore, this Court holds that the chancery court had continuing jurisdiction to enforce its prior order.
(C) However, before this Court concludes its consideration of the propriety of the Mississippi order, an additional question must be addressed. Is there any prohibition under the UCCJA of the requirement of a ne exeat writ and bond?
A study of the UCCJ Act reveals nothing that would prohibit a state court requiring such a bond. Nor have the parties referred this Court to such a prohibition. On the contrary, the Mississippi Rules of Civil Procedure permit the requirement of a bond by a party who seeks to thwart court judgments by refusal to comply. Mississippi Rules of Civil Procedure 65.1 and 70. This Court, therefore, concludes that there is no conflict in a state court ordering this security requirement with the UCCJA.
In conclusion, it is apparent from this record that the Itawamba Chancery Court was correct in continuing jurisdiction over these parties by forfeiture of the ne exeat bond against the principal and the sureties and in finding Donald Roberts in contempt of court. That action is affirmed.

III.
Did the lower court err in overruling a motion of Donald Roberts, who was serving an active duty in the United States Army, to stay the proceedings against him and the sureties on the ne exeat bond pursuant to the requirements of the Soldiers' and Sailors' Civil Relief Act?
The Soldiers' and Sailors' Civil Relief Act, (hereinafter SSCRA) 50 U.S.C.A. § 521 provides that:
At any stage thereof any action or proceeding in any Court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act [sections 501-591 of this Appendix], unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is *28 not materially affected by reason of his military service.
The record of this case shows that an appearance of the defendant has been made in this case and that the defendant was personally before the court through his bond. There is no question raised here of in personam jurisdiction as distinguished from the recent case of Noble v. Noble, 502 So.2d 317 (Miss. 1987).
When a person on active duty in military service invokes the provisions of the Soldiers' and Sailors' Civil Relief Act, the trial judge must make a specific finding that the serviceman's ability to conduct his defense is not materially affected by reason of his military service if such petition is denied. Mathis v. Mathis, 236 So.2d 755 (Miss. 1970); Stringfellow v. Whichelo, 102 R.I. 426, 230 A.2d 858 (1967) Such a finding is a condition precedent to the denial of an application for such relief.
Roberts contends that the lower court made no such finding, and therefore, this case should be remanded to the lower court for further consideration on the application of the Soldiers' and Sailors' Civil Relief Act. Roberts indicated that sworn affidavits as to his inability to attend the hearings would be forthcoming. However, these affidavits were never received by the Mississippi court. Other states have held that servicemen must make showings that he could not obtain leave, that he had attempted to obtain leave and that his military duty was the proximate cause of his alleged inability to attend the hearing in order to be entitled to a stay of proceedings under SSCRA. See Palo v. Palo, 299 N.W.2d 577 (S.Dakota 1980) and Plesniak v. Wiegand, 31 Ill. App.3d 923, 335 N.E.2d 131 (1st Dist. 1975). The burden of showing that a defendant will be materially affected in conducting his defense because of military service is upon the defendant; it is not upon the plaintiff to disprove it. Mayfair Sales, Inc. v. Sams, 169 So.2d 150 (La. 1964), 75 A.L.R.2d 1060. A service man is not entitled to relief because of his armed services, but because his defense is materially affected thereby.
However, in this case Chancellor Malski overruled Roberts' motion for a stay on the grounds that Roberts should not be permitted to selectively invoke the protection of SSCRA, after having so recently sought, to his benefit, the services of the Mississippi Courts.
Recently in Brown v. Brown, 493 So.2d 961, 964 (Miss. 1986) this Court cited with displeasure the act of a party who invoked the Soldiers' and Sailors' Civil Relief Act when it suited his convenience and waived it when it did not. Absent any documentation in the record as to Roberts' inability to defend himself in the courts of Mississippi because of his military service, it appears the lower court was not in error in dismissing his motion for relief under the Soldiers' and Sailors' Civil Relief Act.

IV.
Did the Chancery Court of Itawamba County lose jurisdiction to consider Roberts' alleged contempt after Roberts appealed the prior order forfeiting the ne exeat bond?
This question is easily answered by the recital of the previous detailed facts. The ne exeat bond was ordered forfeited on July 30, 1985 with a reservation of the issue of contempt. The multiple issues before the court were not concluded, but Roberts filed a petition to appeal from an order which was not a final judgment and from which no appeal lies in accordance with the requirements of Mississippi Rule of Civil Procedure 54(b). Subsequently, Roberts appealed the final order of November 12, 1985. Both issues of forfeiture and contempt are considered by this appeal. There is no merit to this assignment.

V.
This case represents a failure of the UCCSA to properly operate. The Mississippi court had continuing jurisdiction over the issues here. The father's right to the child's custody is based on the Mississippi decree; the father's personal performance of the mother's visitation right is also insured under the Mississippi decree. To guarantee the father's performance, the court ordered the ne exeat bond.
*29 Obviously, this child resides outside the boundaries of this state and enforcement of the mother's visitation rights by the Mississippi court is not possible except by forfeiture of the bond and the contempt findings and order.
This Court holds that the Mississippi court had continuing jurisdiction over the issues before that court through the ne exeat bond. Additionally, the father submitted himself to the court's jurisdiction throughout the years of this controversy by personal appearance. Having now disagreed with the court's order of bond forfeiture and contempt, Roberts seeks to interpose jurisdiction to avoid the adverse effects upon him.
Unfortunately, the issues of what adverse effects upon the minor child are present, if any, or at whose instance those adverse effects occur have never been addressed by either the Mississippi or Illinois courts in an adversarial hearing.
After weighing all assignments of error in this case, it is the opinion of this Court that the Itawamba Chancery Court action was proper and is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, P.J., and ZUCCARO, J., not participating.