**In re Roger Alan DEPEW, Jill Marvette Depew, Debtors.**

**Bankruptcy No. 3–85–00037.**

United States Bankruptcy Court, E.D. Tennessee.

July 17, 1985.

Richard A. Spivey, Kingsport, Tenn., for debtors.

## MEMORANDUM AND ORDER

CLIVE W. BARE, Bankruptcy Judge.

This is a proceeding upon debtors' motion to hold Dominion National Bank in contempt for violation of the automatic stay imposed by 11 U.S.C.A. § 362(a) (West 1979 and Supp.1985).[1] Further, debtors

---

**1.** Section 362(a) provides:
  Except as provided in subsection (b) [inapplicable here] of this section, a petition filed under section 301, 302, or 303 of this title ...

operates as a stay, applicable to all entities, of—

  .    .    .    .    .

seek the return of or damages for certain personal property which was in an automobile repossessed by the Bank after a petition in bankruptcy was filed.

Pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, § 362 now provides:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C.A. § 362(h) (West Supp.1985).

## I

On January 11, 1985, Roger Alan Depew and Jill Marvette Depew filed a joint petition in this court under Chapter 7 of the Bankruptcy Code. Scheduled as a secured creditor is the Dominion Bank, P.O. Box 13287, Roanoke, Virginia, 24041, in the amount of $10,300.00. The security is asserted to be a 1984 Mercury Topaz automobile. On the same date the debtors filed their Statement of Intentions, required by 11 U.S.C. § 521(2)(A), indicating it was their intention to retain the automobile.

On January 16, 1985, pursuant to § 342(a) and Bankruptcy Rule 2002(a)(1), the clerk of this court mailed to all creditors a copy of the court's order for a first meeting of creditors which included the following notice of the automatic stay provisions: "As a result of the filing of the [debtors'] petition, certain acts and proceedings against the debtor and his property are stayed as provided in 11 U.S.C. § 362(a) and 11 U.S.C. § 366."

On February 8, 1985, the debtors filed a Petition for Contempt alleging that on or about January 31, 1985, agents of Dominion National Bank repossessed the 1984 Mercury Topaz automobile, which also contained various items of personal property belonging to the debtors, in violation of the provisions of the § 362(a) automatic stay.[2]

On February 14, 1985, the court notified all parties in interest, including Dominion National Bank, that a hearing on the debtors' petition for contempt would be held March 19, 1985, at 11:00 a.m., in the Municipal and Safety Building, Johnson City, Tennessee. The debtors and their attorney appeared; Dominion National Bank did not appear. Nor did Dominion respond to the petition in any respect.

The debtors testified that on the night of January 31, 1985, they parked the 1984 Mercury Topaz automobile in the driveway at their home. At 2:00 p.m. the next day they discovered the car was missing. They called the Sheriff's Department to report the car stolen. They were informed by the Sheriff's Department that the car had been repossessed by the Dominion National Bank and taken to Roanoke, Virginia. They notified their lawyer who advised them to call the Bank. They called the Bank and talked to a Mrs. Willoughby. They informed her they wanted the car back and wanted their personal belongings which were in the car. The debtors were told the Bank would not release the car. When the debtors asked where the car was they were told it was in Kingsport. They asked to speak to the Bank manager and were told the same thing.

The debtors testified that they had previously received telephone calls from the Bank asking them to take the car to Kingsport Motors. The caller told them that they had taken bankruptcy but that they couldn't file bankruptcy on the car.

Introduced as an exhibit is a Notice of Repossession from American Lenders Service Company, Asheville, North Carolina, dated January 31, 1985, addressed to Roger A. Depew, stating that pursuant to the "State Vehicle Code" the 1984 Mercury had

---

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . .

11 U.S.C.A. § 362(a) (West 1979 and Supp.1985).

**2.** A copy of the Petition for Contempt was served upon Dominion Bank by the debtors' attorney, pursuant to Bankruptcy Rule 9013.

been repossessed for the legal owner, Dominion Bank, Roanoke, Virginia. Also included in the Notice of Repossession is a form Notice of Disposition of Personal Property stating that the personal property which was in the vehicle at the time of repossession is "now stored at the above location." The notice further states that the property may be picked up on weekdays from 9:00 a.m. until 5:30 p.m., and that at the expiration of five days the property "will be liquidated according to the appropriate provisions for such in the State Civil Code."

*No "above location" is shown, however.*[3] Nor is there any indication as to which State Civil Code is involved.

The notice also states that a report has been filed with the County Sheriff's Department at Kingsport, Tennessee.

Subsequent to the hearing on March 15, 1985, the court notified all parties in interest, including the Dominion Bank, that a hearing would be held on May 14, 1985, at 10:00 a.m., in Johnson City, Tennessee, to determine the amount of damages to be assessed against the Bank. Again the debtors and their attorneys appeared, and again the Bank failed to respond or to appear.

At the hearings on March 19 and May 14, the debtors testified that the following items of personal property had been in the automobile when it had been repossessed by the Dominion Bank or its agents:

Vinyl coat with hood, value $50.00

8 cassettes, new, $80.00

3 tapes, $24.00

2 children's jackets, $20.00

1 pair tennis shoes, $5.00

2 pair children's shoes, $10.00

6 bottles Herbalife vitamins, $60.00

Odds and ends, personal papers, no value stated.

---

**3.** The notice actually does not show any street address for American Lenders Service Company. Instead it shows Post Office Box 5717, Asheville, North Carolina. The return address on the envelope is the same.

## II

Under the former Bankruptcy Act and former Bankruptcy Rule 920, a bankruptcy referee had limited remedial and punitive contempt powers. Subsequently, under the Bankruptcy Code and 28 U.S.C.A. § 1481 (repealed 1984) the contempt powers of the Bankruptcy Judge were expanded. *See generally* 1 *Collier on Bankruptcy* ¶ 3.01[8][c] (15th ed. 1985). However, in enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, Congress failed to reenact § 1481. *See* 28 U.S.C.A. § 1481 (West Supp.1985). Thus, there is presently no specific statutory delineation of the bankruptcy court's contempt powers.

However, under the current law "the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district." 28 U.S.C.A. § 151 (West. Supp.1985). Unquestionably, federal district courts have "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966).

Under the 1984 amendments the district court "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C.A. § 157(a) (West Supp.1985). Pursuant to such referral by Standing Order of the United States District Court for the Eastern District of Tennessee, entered on July 11, 1984, this court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments" subject to appellate review. 28 U.S.C.A. § 157(b)(1) (West Supp.1985).

---

The debtors were never able to find out where the car was located. They were informed by the Sheriff's Department in Kingsport that it had been taken to Roanoke, Virginia.

■ Thus, the determinative inquiry is whether a contempt proceeding to assess damages under § 362(h) constitutes a "core proceeding" within the meaning of § 157(b)(1).[4] This court is well satisfied that such a proceeding is a core proceeding arising under title 11.

The term "core proceeding" is not explicitly defined by the 1984 legislation. In *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) the plurality observed that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights." 102 S.Ct. at 2871.[5]

The key function of the core-noncore distinction is to separate proceedings in which non-Article III Bankruptcy Judges may properly exercise broad powers from those proceedings in which they are required by the Constitution to exercise only limited powers. The Supreme Court held in the *Northern Pipeline* decision that non-Article III judges may properly exercise broad powers in the adjudication of congressionally created rights, but may exercise only limited powers in the adjudication of state-created rights.

Carlson, *Distinguishing Core From Noncore Proceedings*, 1 *Norton Bankruptcy Law Advisor* 1, 2 (Jan.1985).

Thus, "core proceedings include all proceedings in which the right to relief is created by Title 11." Carlson, *supra*, at 3.

Insofar as the meaning of the phrase "arising under" is concerned, the legislative history of 28 U.S.C.A. § 1471 (repealed 1984) provided:[6]

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6401.

The debtors' right to the automatic stay under § 362 and their right to damages under § 362(h) for violation of the stay are congressionally created rights under title 11 as much as are avoidance powers or a § 525 discrimination claim. As the legislative history to § 362 makes clear:

The automatic stay is *one of the fundamental debtor protections provided by the bankruptcy laws*. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and

---

**4.** The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding...." 28 U.S.C.A. § 157(b)(3) (West Supp. 1985).

**5.** However, the 1984 legislation does provide that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C.A. § 157(b)(3) (West Supp. 1985).

**6.** This court is, of course, mindful that insofar as it reflects elsewhere the previous broad grant of jurisdiction under § 1471 this legislative history "should be read with the caution that it is no longer accurate as to what bankruptcy judges may try." Cowans, *The Bankruptcy Court and Its Jurisdiction*, West's Bankruptcy Newsletter 17, 27 (Nov. 13, 1984).

to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6296 (emphasis supplied).

■ A contempt proceeding for damages under § 362(h) is not among those proceedings explicitly designated as "core proceedings" in 28 U.S.C.A. §§ 157(b)(2)(A–O) (West Supp.1985). However, § 157(b)(2)(G) (designating as core proceedings "motions to terminate, annul or modify the automatic stay") clearly indicates the core nature of matters relating to the automatic stay. Further, the breadth of the catch-all provision of § 157(b)(2)(O) (designating as core proceedings "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship") may well encompass just such a proceeding— the automatic stay is clearly a fundamental prerequisite to the orderly liquidation of assets and the adjustment of the debtor-creditor relationship envisioned by the Bankruptcy Code. Finally, the list of core proceedings in ˙§ 157(b)(2) is illustrative, not exhaustive.[7] Even without regard to the provisions of § 157(b)(2)(O), this court is well satisfied that matters concerning the integrity and efficacy of the automatic stay as a fundamental debtor protection are unquestionably matters integral to "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power." *Marathon Pipe Line Co.,* 102 S.Ct. at 2871.

This is a core proceeding which this court may "hear and determine" pursuant to § 157(b)(1).[8]

### III

Dominion National Bank's violation of the automatic stay provisions of § 362(a) is clear and uncontradicted. Dominion failed to respond to the motion for contempt and failed to appear at two hearings scheduled by the court. The court can only conclude that Dominion believes it can with impunity violate specific statutes enacted for the protection of both debtors and creditors. At no time did Dominion seek relief from the automatic stay. *See* 11 U.S.C.A. § 362(d) (West Supp.1985). Instead, the Bank through its agents repossessed the vehicle in total disregard of the provisions of a United States statute, 11 U.S.C.A. § 362(a) (West 1979 and Supp.1985).

■ Pursuant to § 362(h) the court thus awards actual damages to the debtors in the amount of $249.00, and attorneys' fees in the amount of $250.00.[9] Further, this court believes that the facts of this case

---

7. "Core proceedings include, but are not limited to...." 28 U.S.C.A. § 157(b)(2) (West Supp. 1985).

8. Section 362(h) authorizes the imposition of punitive damages. Prior to the enactment of § 362(h), *compensatory* damages and attorneys' fees could be awarded ancillary to a contempt order for violating the automatic stay so long as the awards were not punitive and restored the status existing before the violation. *Superior Propane v. Zartun,* 30 B.R. 543 (Bankr. 9th Cir. 1983). Prior to its repeal, under 28 U.S.C.A. § 1481 (repealed 1984) the bankruptcy judge had no power to punish by fine a criminal contempt not committed in the presence of the judge.

Since "[c]ivil contempt is characterized by the court's desire to compel obedience to a court order, [citation omitted], or to compensate the contemnor's adversary for the injuries which result from the noncompliance," *Falstaff Brew-*

*ing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 778 (9th Cir.1983), punitive damages would not come within the parameter of a compensatory civil contempt remedy.

However, this court's holding should not be misinterpreted as an attempted aggrandizement of criminal contempt jurisdiction seized upon in the absence of explicit statutory restriction—this court's authority to award punitive damages for a violation of the § 362 automatic stay arises solely because core proceedings referred to it include all proceedings in which the right to relief is created by title 11. A right to punitive damages for violation of the automatic stay is now explicitly created by § 362(h).

9. Originally, in their petition for contempt debtors requested the court to enter an order requiring Dominion National Bank to return the repossessed automobile to the debtors. Debtors subsequently dropped their request for this relief.

require the imposition of punitive damages in the amount of $1,000.00, appropriate circumstances having been clearly shown by the uncontradicted proof adduced at two hearings and by the Bank's failure to appear.

IT IS SO ORDERED.