**In re Richard Lee JACOBS, Debtor.**

**Bankruptcy No. 2–88–03700.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

June 5, 1989.

Stephen E. Schafer, Columbus, Ohio, for debtor.

American Express, Phoenix, Ariz., creditor.

Nora E. Jones, Schottenstein, Zox & Dunn, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

### OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

#### I. *Preliminary Statement*

This matter is before the Court upon the Motion for Contempt Citation ("Motion") filed by Richard L. Jacobs, the debtor in this Chapter 7 case ("Debtor"). Debtor's Motion seeks recovery of compensatory and punitive damages, including reasonable attorney fees, from American Express for its alleged violation of the automatic stay provisions of 11 U.S.C. § 362(a). American Express has filed no opposition to Debtor's

Motion and failed to attend the hearing thereon conducted on May 16, 1989.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court is empowered to hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(A), (E) and (G). *See Budget Service Company v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir.1986). The following opinion and order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

## II. *Factual Findings*

The following facts were adduced from the uncontraverted testimony of the Debtor:

1. Debtor filed a petition under Chapter 7 of the Bankruptcy Code on July 22, 1988;

2. The schedules accompanying Debtor's petition listed American Express as the holder of an unsecured claim against the Debtor. American Express' address was listed in Debtor's bankruptcy schedules as P.O. Box 5485, Chicago, Illinois 60679–0001. All notices mailed by the Bankruptcy Clerk were sent to American Express at the above address. None of such notices were returned to the Bankruptcy Clerk undelivered;

3. On August 17, 1988, the Debtor received a letter from American Express under the signature of T.M. Gibbs of American Express' Accounts Control Department, which indicated that Debtor's account had been cancelled and that his card was no longer valid. This letter, which was sent from American Express' Phoenix, Arizona, office, also stated the total amount due as of Debtor's last statement—$738.19;

4. On August 18, 1988, American Express sent a correspondence denominated as an "AMEX GRAM" to the Debtor. The AMEX GRAM again notified Debtor of the cancellation of his account and requested return or destruction of Debtor's American Express card. The AMEX GRAM provided that it was to be returned to American

Express with Debtor's certification of either the return or destruction of the American Express card noted thereon;

5. On September 3, 1988, Debtor received a Statement of Account generated from American Express' Chicago, Illinois, office, indicating a total amount due of $755.62 and requesting that payment be made to American Express. The Statement of Account again reflected the cancellation of Debtor's account with American Express and provided as follows: "Pay by 09/25/88 & avoid further delinquency charge."

6. On or about September 15, 1988, Stephen E. Schafer ("Schafer"), Debtor's counsel, mailed a certified letter to American Express which stated:

"The above-named debtor(s) has/have filed a bankrutpcy [sic] in United States Bankruptcy Court, 85 Marconi Boulevard, Columbus, Ohio on July 22, 1988. I have enclosed a copy of the NOTICE mailed to all creditors by the Court. Please do not contact my client(s) again. If you have any questions, please contact my office.

I have also enclosed a copy of your recent mailing to my client to assist you in discontinuing all collection efforts. Please notify all collection agencies you have assisting you in collecting this account to stay all collection efforts."

A receipt indicating that American Express accepted delivery of this letter was returned to Schafer on September 19, 1988.

7. On or about September 22, 1988, a letter was mailed to the Debtor by G.C. Services, a collection agency located in Houston, Texas. This letter provided that G.C. Services was acting on behalf of American Express to collect the $755.62 account balance. The letter stated as follows:

"Dear Richard L. Jacobs:

Your account with the above-mentioned client has been referred to us for immediate collection.

You should know that we are an experienced collection agency. We provided the systems used by a major branch of the federal government and various state

governments to collect delinquent taxes. We have collected millions of accounts from people just like you.

Now we intend to collect your debt. We know what we are doing, and we are very efficient. We have handled every kind of account—and dealt with every kind of excuse.

Do not try to drag this out any longer. By this time you must surely know the problems you will face later if you do not pay now. Send us your payment in full in the enclosed envelope immediately.

Yours very truly,

J. Moran

Collection Mgr."

G.C. Services also telephoned the Debtor on several occasions requesting payment of the American Express account balance. Debtor informed G.C. Services of his bankruptcy filing, the date his petition was filed, and his attorney's name and address. However, G.C. Services continued to telephone the Debtor and demand payment of the American Express account until it received a letter from Schafer, dated September 30, 1988, which enclosed Schafer's previous certified letter to American Express of September 15, 1988;

8. On or about March 10, 1989, Financial Collection Agencies, a collection service located in Chicago, Illinois, sent a collection notice to the Debtor which stated as follows:

"Your account has been placed with this office for immediate collection. Our client has instructed us to commence with all the collection means at our disposal. If at all possible, we are prepared to collect this account without inconvenience to you. Your cooperation is necessary if this matter is to be resolved. WE URGE YOU TO REMIT AT ONCE."

Financial Collection Agencies also repeatedly telephoned the Debtor leaving urgent messages on Debtor's telephone answering machine. This caused the Debtor great embarrassment inasmuch as several of such messages were received at times when guests were visiting Debtor's home. Debtor telephoned Financial Collection Agencies and informed them of his bankruptcy filing, the docket number assigned to his bankruptcy case and the name and address of his attorney. Nonetheless, he continued to receive harassing telephone calls from Financial Collection Agencies; and

9. Debtor presently is employed as a salesman. He earns an average weekly gross income of $800. To attend the hearing, Debtor was required to miss work and, as a result, he lost wages in the amount of $80.

### III. *Legal Discussion*

Section 362 of the Bankruptcy Code generally provides for the automatic stay of any and all proceedings against the debtor once a bankruptcy petition is filed. The automatic stay's importance is echoed in the legislative history of § 362, which provides in pertinent part that:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 54–55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787 at 5840–41 and 6296–97.

The Sixth Circuit recently described the automatic stay in the following manner:

Under section 362(a) of the Bankruptcy Code, the filing of a petition creates a broad automatic stay protecting the property of the debtor. This provision "has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws.' " *Midlantic Nat'l. Bank v. New Jersey Dep't. of Envtl. Protection*, 474 U.S. 494, 503 [106 S.Ct. 755, 760–61, 88 L.Ed.2d 859] (1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)). The automatic stay extends to virtually all formal and informal actions against property of the bankruptcy estate. It is intended to "stop[ ] all collection efforts, all harass-

ment, and all foreclosure actions." S.Rep. No. 989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5840. The automatic stay "is effective upon the date of the filing of the petition ... and formal service of process will not be required." 2 *Collier on Bankruptcy* ¶ 362.03 (15th ed. 1988) (footnotes omitted). Actions taken in violation of the automatic stay generally are void, even if the creditor had no notice of the stay. *See, e.g., In re Clark,* 60 B.R. 13, 14 (Bankr.N.D. Ohio 1986) (Creditor "had not known of Debtor's filing at the time of repossession but ... it was, nonetheless, required to return the vehicle to Debtor."); *In re Advent Corp.,* 24 B.R. 612 (Bankr. 1st Cir. 1982) (acts in violation of automatic stay are void regardless of lack of knowledge); *Collier, supra,* ¶ 362.03 ("In general, actions taken in violation of the stay will be void even where there was no actual notice of the existence of the stay.").

*Smith v. First America Bank, N.A. (In re Smith),* 876 F.2d 524 at 525–26 (6th Cir. 1989). The consequences of violating the automatic stay provisions of § 362(a) are set forth in 11 U.S.C. § 362(h), which provides that:

> "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

*See Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988); *In re Holman,* 92 B.R. 764, 767–68 (Bankr.S.D. Ohio 1988).

As noted above, 11 U.S.C. § 362(h) provides that an individual injured by any willful violation of the automatic stay is entitled to recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. *In re Holman,* 92 B.R. at 770. Here, American Express' conduct plainly was willfully violative of the automatic stay. Despite ample notice of the pendency of Debtor's bankruptcy proceeding, American Express has repeatedly harassed the Debtor in an attempt to collect its pre-petition debt. American Express has engaged two collection agencies which, in an effort to collect the subject debt, have employed threatening and embarrassing tactics against the Debtor. American Express persisted in this conduct, despite receiving several letters from Schafer requesting that it immediately cease its collection activities. In short, it is difficult to conceive of a more flagrant violation of the automatic stay than that committed by American Express in this case. Indeed, given the egregious nature of American Express' conduct, punitive damages are properly awardable. *See In re Depew,* 51 B.R. 1010, 1014–15 (Bankr.E.D.Tenn.1985); *Aponte v. Aungst (In re Aponte),* 82 B.R. 738, 742 (Bankr.E.D.Pa.1988).

Based upon the foregoing, the Court hereby ORDERS as follows:

(1) Compensatory damages for lost wages ($80) and embarrassment and humiliation ($200) are hereby awarded in the amount of $280;

(2) Compensatory damages attributable to Debtor's attorney fees in connection with the instant Motion are hereby awarded in the amount of $500; and

(3) Punitive damages in the amount of $1,500 are hereby imposed against American Express.

IT IS SO ORDERED.