In re Jimmie Lee SUMPTER, Jr., Debtor.

Bankruptcy No. 93 B 25659.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 22, 1994.

John A. Urban, Asst. State's Atty., Will County State's Attorney's Office, Joliet, IL, for Thomas Fitzgerald, Sheriff of Will County.

Judith L. Johnson, Law Offices of Edward M. Lupa, Chicago, IL, for Russell and Cheryl Zimmerman.

Raymond F. Gunn, Chicago, IL, for Jimmie Lee Sumpter, Jr., debtor.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the amended motion for contempt for an alleged willful violation of the automatic stay of 11 U.S.C. § 362(a), filed by Jimmie Lee Sumpter, Jr. (the "Debtor") seeking an award of actual and punitive damages, costs and attorney's fees, pursuant to 11 U.S.C. § 362(h). Responses in opposition thereto have been filed by the respondents, Russell Zimmerman and Cheryl Zimmerman (the "Creditors"), and Thomas Fitzgerald, Sheriff of Will County, Illinois (the "Sheriff"). In addition, the Sheriff moved for judgment pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporating by reference Federal Rule of Civil Procedure 52(c), at the conclusion of the presentation of the Debtor's evidence at trial. The Court reserved ruling until the close of all the evidence. After consideration of the parties' pleadings, arguments and all the evidence adduced at trial, the Court holds that the Creditors willfully violated the automatic stay of sections 362(a)(1), (a)(2) and (a)(6) by using agents who were off-duty employees of the Village of Bolingbrook, Illinois, to complete the post-bankruptcy removal and storage of the Debtor's personal property. No actual damages for injury to or wrongful detention of the Debtor's personal property are awarded for failure of proof. Punitive damages, however, are awarded in the sum of $1,000.00, as well as $1,000.00 for the Debtor's reasonable attorney's fees, plus court costs.

The Court grants the Sheriff's motion for judgment. All relief against the Sheriff is denied. The Court finds the evidence showed no willful violation of the automatic stay by the Sheriff or his duly authorized deputies who assisted in the pre-petition eviction of the Debtor and his family from the subject real property. Moreover, the Sheriff's assertion of the sovereign immunity defense is well-founded and sustained.

## I.  JURISDICTION AND PROCEDURE

■ The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court rejects the Creditors' argument that it lacks subject matter jurisdiction over this contested motion. Although Illinois law is involved in determination of some of the issues, the ultimate relief claimed under section 362(h) is a matter which arises under the Bankruptcy Code for purposes of 28 U.S.C. § 1334(b). Moreover, much of the conduct complained of occurred post-petition, so the relief sought arises in connection with the Debtor's bankruptcy case. See *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990); *In re Spaulding & Co.,* 131 B.R. 84, 88 (N.D.Ill.1990).

## II.  FACTS AND BACKGROUND

Under date of December 28, 1992, the Creditors, as sellers, and the Debtor, his spouse, Beverly Sumpter, their daughter, Michelle Wilson, and her spouse, Henry Wilson, (collectively the "Buyers"), entered into Articles of Agreement for Deed (the "Agreement") for the residential property commonly known as 1436 Carriage Lane, Bolingbrook, Illinois (the "Real Property"). See Creditors' Exhibit No. 1. Like many Illinois contracts for deed, paragraph 21 of the Agreement

contained alternative provisions and remedies for default by the Buyers, which included the Creditors' rights to forfeit the Buyers' rights under the Agreement, and a right to maintain an action to recover possession of the Real Property under the Illinois Forcible Entry and Detainer Act (735 ILCS 5/9–101 *et seq.*), subject to the Buyers' reinstatement rights.

The Creditors declared a forfeiture of the Agreement, *inter alia,* for failure to make the installment payments under the Agreement for the period February 1993, through August 1993. On September 15, 1993, the Creditors caused written notice to be sent of their demand to cure all defaults by or before October 15, 1993, and for possession thereafter for any failure to so cure. *See* Creditors' Exhibit Nos. 2 and No. 3. The Creditors subsequently declared the Agreement forfeited by the Buyers for failure to cure. *See* Creditors' Exhibit No. 4. A declaration of forfeiture was sent to the Buyers on October 15, 1993. *See* Creditors' Exhibit No. 5. The Creditors then filed a state court action under the Illinois Forcible Entry and Detainer Act against the Buyers in the Circuit Court of Will County, Illinois, in order to regain possession of the Real Property. *See* Creditors' Exhibit No. 6. On November 9, 1993, the state court entered an order for possession (the "State Court Order") of the Real Property in favor of the Creditors against the Buyers. *See* Creditors' Exhibit No. 7. None of the Buyers left the Real Property. The Debtor and his family occupied the Real Property as their residence. After entry of the State Court Order, the Creditors made ready to evict the Debtor and his family using deputies of the Sheriff.

Henry Wilson, the Debtor's son-in-law, stopped the Creditors' first efforts to enforce the State Court Order when he filed a Chapter 7 petition on November 16, 1993. Upon learning of Wilson's bankruptcy, the Sheriff's deputies and the Creditors immediately stayed all efforts to enforce the State Court Order. The Creditors moved this Court pursuant to section 362(d) for an order modifying the automatic stay in that case. They were successful in obtaining such an order on December 3, 1993. That order authorized the Creditors to proceed with the eviction of the Debtor and his family.

The eviction and enforcement of the State Court Order began in the early afternoon of December 7, 1993, when two deputy Sheriffs, the Creditors and other members of the Creditors' family met at the Real Property at approximately 1:30 p.m. After Sergeant Bergeson and Deputy Ealey explained the process to the Debtor's family members who were present (the Debtor was not present), the eviction began at approximately 2:00 p.m. The Creditors, assisted by other members of their family, began to physically remove all items of personal property from the interior of the dwelling structure used as a residence on the Real Property. The locks were changed around 2:30 p.m., and the Creditors continued to move the personal property from the residence and stack it in the front yard area. The Creditors testified that they followed the directions of the Sheriff's deputies in moving and placing all personal property in the front yard. According to the Creditors, the personalty was moved and deposited without damaging it. Given the limited amount of front yard space, much of the personal property was piled and stacked. *See* Debtor's Group Exhibit No. 3.

The evidence is disputed as to exactly when the physical removal of the personal property from the residence was completed. The Creditors' and Sheriff's evidence was to the effect that all the items were moved from inside the house to the front yard from 2:00 p.m. until approximately 4:00–4:30 p.m. The testimony from various family members of the Debtor, however, was that things were still being moved as late as 6:00 p.m. It is undisputed that neither of the Sheriff's deputies moved any of the personal property. According to Sergeant Bergeson, they were there to keep the peace and serve the State Court Order. They considered their work substantially completed when the locks were changed at approximately 2:30 p.m. It is also undisputed that the Debtor filed the instant Chapter 7 case at 3:51 p.m. on that day. He thereafter caused a facsimile of the petition to be transmitted to Bolingbrook where it was furnished to those present.

The Debtor's items of personal property were not segregated from those of his family. By the time the Debtor arrived on the scene in the early evening, he testified, (and was corroborated by other family members), that his family was precluded from removing any of their personalty from the front yard on orders from representatives of the Village of Bolingbrook (the "Village"), including members of its police department. The reason given was to prevent the Buyers from trespassing allowing them back on the front yard of the Real Property. All of the removed personal property remained outside until the following day. Some of the testimony adduced showed that the personal property was exposed to the elements, and some items were taken by onlookers.

Thereafter, off-duty employees of the Village hauled the personal property off to a storage facility. It is undisputed that the Creditors paid for the removal of the personalty by the Village employees. A Village code enforcement officer testified that the Village was concerned for public health hazard reasons with onlookers and passersby because the items in the front yard included hypodermic needles and insulin for treatment of one of the Debtor's family members suffering from diabetes.

The Debtor claims that various items among the personal property were damaged during the course of the eviction and the subsequent removal to the storage facility. See Debtor's Exhibit No. 5. The nature, exact extent and the bases for the claimed amount of damages were not explained at trial, nor was the Debtor able to explain how he valued the items listed on Debtor's Exhibit No. 5. He stated he relied on statements from his wife. Although she testified, she gave no evidence on the nature, extent or measure of damages claimed. There is no competent evidence in the record as to the respective historical acquisition costs, replacement costs, repairs or claimed loss of use for the items damaged.[1]

After the eviction, the Debtor and his family stayed at several motels incurring expenses for food and lodging, for which the Debtor seeks recovery. See Debtor's Exhibit No. 6. The Debtor estimated his own per diem costs at $40.00 for lodging and $24.00 for food. In addition, the documentary and testimonial evidence indicated that the Debtor had incurred approximately $1,000.00 in attorney's fees, and $160.00 in costs, and had agreed to compensate his attorney at the rate of $195.00 per hour. See Debtor's Exhibit No. 4, Statement of Financial Affairs, Question 9; and Statement Pursuant to Bankruptcy Rule 2016(b). Additional fees or costs were not detailed in the testimony.

## III. DISCUSSION

Section 362(a) of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

(1) *the* commencement or *continuation,* including the issuance or employment of process, *of a judicial,* administrative, *or other action or proceeding against the debtor that was* or could have been *commenced before the commencement of the case under this title,* or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) *the enforcement, against the debtor* or against property of the estate, *of a judgment obtained before the commencement of the case* under this title;

.     .     .     .     .

(6) *any act to* collect, assess, or *recover a claim against the debtor that arose before the commencement of the case* under this title.

11 U.S.C. §§ 362(a)(1), (2) and (6) (emphasis added). The filing of the bankruptcy petition triggers the automatic stay of section 362(a), notwithstanding the lack of actual notice of

---

1. The Debtor filed his schedules of assets on February 18, 1994. He listed the Real Property as an item which he intended to reaffirm, and valued his household goods and supplies at $2,000.00, after damage resulting from the eviction. See Debtor's Exhibit No. 4, Schedules A and B.

commencement of the proceedings. *In re Garcia*, 23 B.R. 266, 267 (N.D.Ill.1982). The automatic stay protects the Debtor and pre-petition creditors as well as property of the Debtor's bankruptcy estate.

■■■ The Court holds that the Creditors did not violate the automatic stay by evicting the Debtor from possession of the residence on the Real Property. The eviction occurred several hours before the Debtor filed his bankruptcy petition. Although the Debtor and his family had been evicted and their personal property removed from the interior of the residence by the time the bankruptcy petition was filed, the subsequent removal of and damage to the personal property stacked in the front yard was done without this Court's approval. The removal was an incidental part of the eviction process[2] designed to restore the Creditors to full actual possession of the entire Real Property (including the front yard, not just the residence) to the physical exclusion and expulsion of the Debtor, his family, and all of their personal property. The post-petition removal of and damage to the Debtor's personal property was a violation of sections 362(a)(1), (2) and (6) because the Creditors were acting to enforce their pre-petition claim of a declared forfeiture of the Agreement and recover full possession of the Real Property, which included the front yard. Such actions also constituted acts to recover their claim for possession of the Real Property which arose before commencement of the case. Further, their actions were the continuation and completion of the state court judicial proceeding against the Debtor that had been commenced before the filing of the bankruptcy petition.

■■■ Contrary to the Debtor's arguments, the Real Property was not a part of the bankruptcy estate under 11 U.S.C. § 541. By the time the Debtor filed his Chapter 7 petition, he no longer had any remaining legal or equitable interest in or possessory rights to the Real Property. Whatever possessory rights the Debtor had in the Real Property were terminated by the State Court

Order. The Debtor and his family members were occupying the Real Property as tenants at sufferance. *See In re Maxwell*, 40 B.R. 231, 236 (N.D.Ill.1984).

■■■ All the Buyers' interests under the Agreement had been terminated and forfeited pre-petition under Illinois law. In that regard, Illinois law controls because the Real Property is located in Illinois; the underlying Agreement was made, executed and to be performed in Illinois; and the Debtor and the other Buyers were and still are residents of the state of Illinois. Federal bankruptcy courts normally look to state substantive law to determine the nature of and interests in property, subject to bankruptcy estate administration in accordance with the Bankruptcy Code and Rules. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Brass Kettle Restaurant, Inc.*, 790 F.2d 574, 575 (7th Cir. 1986). Contrary to the Debtor's statement of intent to reaffirm the Agreement, at the time of the bankruptcy petition, the Agreement was not an executory contract. *See In re Streets & Beard Farm Partnership*, 882 F.2d 233 (7th Cir.1989) (contracts for deed are not executory contracts, but more in the nature of executed security agreements where only one side has substantially performed).

■■■ Illinois law allows forfeiture of installment land sale contracts. *See generally* 35 *Illinois Law and Practice*, Vendor and Purchaser §§ 63–70 (1958 and 1991 Supp.). Provisions in a contract for the sale of real property preserving the right to void the contract are valid, and will be given effect in accordance with the intention the parties have shown by the entire agreement. *See In re Layton*, 138 B.R. 219, 222 (Bankr.N.D.Ill. 1992); *In re Jones*, 99 B.R. 877 (Bankr. N.D.Ill.1989). When a party to an installment real estate contract attempts to declare a forfeiture, the proper method is to follow the provisions in the contract. *Bocchetta v. McCourt*, 115 Ill.App.3d 297, 300, 71 Ill.Dec. 219, 221, 450 N.E.2d 907, 909 (1st Dist.1983).

---

**2.** Although the Illinois Forcible Entry and Detainer Act does not statutorily define "eviction" as a specific term, it is not a vague or confusing concept. Black's Law Dictionary (6th ed. 1990) includes the following entry, highly applicable here: "[d]ispossession by process of law; the act of depriving a person of the possession of land or rental property which he has held or leased."

Although the actions of removing the Debtor's personalty from the front yard were performed by off-duty Village employees, those individuals were acting as agents for the Creditors who paid them, and as such, the Creditors are therefore liable. An agency relationship does not necessarily depend on express appointment and acceptance thereof, but may be implied from the circumstances of a particular case. *Central States Trucking Co. v. J.R. Simplot Co.*, 965 F.2d 431, 433 (7th Cir.1992). An agent may bind his principal through the exercise of apparent authority. *Mason & Dixon Lines, Inc. v. Glover*, 975 F.2d 1298, 1303 (7th Cir.1992). To determine whether an agent had apparent authority, courts focus on the acts of the principal. *Id.* Moreover, a principal will generally ratify the acts of an agent when he has full knowledge of all the material facts and takes some action to affirm the agent's actions. *See Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 634 (7th Cir.1992). The Court finds that the Village employees were acting as agents of the Creditors. By paying the Village to remove and store the Debtor's personalty, the Creditors gave the Village apparent authority to act on their behalf. Further in making the payment to the Village, the Creditors ratified the Village employees' acts.

Next, the Court must determine if the violation of the automatic stay was willful. Section 362(h) provides:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). The Debtor is clearly an individual for purposes of section 362(h), and has standing to invoke a claim for his damages and attorney's fees. *See, e.g., In re Prairie Trunk Railway*, 112 B.R. 924 (Bankr.N.D.Ill.1990); *In re Prairie Trunk Railway*, 125 B.R. 217 (Bankr.N.D.Ill.1991), *aff'd, Consolidated Rail Corp. v. Gallatin State Bank*, slip op., 1992 WL 611175 (N.D.Ill. May 15, 1992).

A willful violation of the stay does not require that the creditor had the specific intent to violate the stay. *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). When a creditor engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition had been filed, it can be considered a willful violation of the stay subjecting the creditor to liability for damages under section 362(h). *In re Roete*, 936 F.2d 963, 965 (7th Cir.1991). A violation is willful even if the creditor believed himself justified in taking the actions found violative of the stay. *Taborski v. United States*, 141 B.R. 959, 969 (N.D.Ill.1992); *In re Alberto*, 119 B.R. 985, 993 (Bankr.N.D.Ill.1990).

The Court finds that the Creditors acted willfully by continuing to effect the removal of personal property of the Debtor from the front yard of the Real Property utilizing the Village off-duty employees who subsequently removed the personalty to a storage facility. The Creditors' actions were deliberately done with knowledge that the bankruptcy case was pending and such actions were willful. *See In re Forty–Eight Insulations, Inc.*, 54 B.R. 905, 909 (Bankr. N.D.Ill.1985).

Because there is no evidence that the Sheriff was involved in the moving of the personal property of the Debtor or participated in the completion of the eviction of the Debtor from the Real Property, which occurred after the bankruptcy petition was filed, the Court concludes that the Sheriff did not violate the automatic stay.

## IV. DAMAGES

### A. Standing

While the Debtor may pursue this contested motion under section 362(h) to recover his own damages incurred, he lacks standing to recover any damages claimed by his family. The automatic stay does not afford protection or relief for the Debtor's family or their property. *See generally In re Prairie Trunk Railway Co.*, 112 B.R. 924 (Bankr.N.D.Ill.1990). The Debtor, as sole movant, can only assert his claim under section 362(h), not anyone else's claim. He is not a duly appointed class or other represen-

844

tative for the other members of his family who have not sought to join in his motion or intervene as parties. *See* Federal Rules of Bankruptcy Procedure 7024 and 9014. Standing requires a party to have a personal stake in the outcome of the controversy. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). A movant must show that he has sustained or is in immediate danger of sustaining a direct injury as a result of a party's conduct. *Foster v. Center Township of LaPorte County,* 798 F.2d 237, 242 (7th Cir.1986). Thus, in order to recover damages under section 362(h), the Debtor must demonstrate that he has suffered actual injury as a result of the Creditors' violation of the automatic stay, and must relate that injury to the damages sought. *See In re Wright,* 156 B.R. 549, 552 (Bankr.N.D.Ill.1992). This is consistent with the standing doctrine espoused by the United States Supreme Court: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

### B.  *Actual Damages*

Actual damages for purposes of section 362(h) should only be awarded if there is evidence supporting the award of a definite amount which may not be predicated upon mere speculation.[3]  Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty. *See Doe v. United States,* 976 F.2d 1071, 1085 (7th Cir.1992); *see also Alberto* 119 B.R. at 995. A party seeking damages must prove them using methodologies that need not be intellectually sophisticated. *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 415 (7th Cir.1992). Still, a damage award cannot be based on mere speculation, guess or conjecture. *Adams Apple Distr. Co. v. Papeleras Reunidas, S.A.,* 773 F.2d 925, 930 (7th Cir.1985).

Because the eviction from the residence on the Real Property was performed in accord with the State Court Order and occurred pre-petition, the Court finds that the Debtor is not entitled to any award for his motel or food expenses he incurred after the petition was filed. The Debtor would have necessarily incurred such expenses for food and lodging in any event. The nature of the actual damages sustained by the Debtor as a result of the stay violation was the injuries to his personal property. The Debtor, however, candidly admitted that he could not specifically determine the exact nature of the damage to the various items of personal property on the list, nor the extent of the damage or bases of the computations shown on Debtor's Exhibit No. 5. His spouse did not testify on these aspects of the damages claimed. Accordingly, the Court lacks appropriate evidence of the proven damage, in value or loss of use, to award any actual damages for the Debtor's items that were damaged. Notwithstanding the lack of persuasive evidence as to the nature, extent and amount of damage to the personal property of the Debtor, the Court does not doubt that some of his personal property was damaged during the course of its removal from the front yard to the storage facility after its exposure overnight in winter weather.

Lacking precise standards for the appropriate measure of actual damages awardable under section 362(h), the Court has looked to Illinois law for assistance. Under Illinois law, the usual measure of damages for the total loss or destruction of personal property is its reasonable or market value at the time and place of the loss. *See, e.g., H.K. Porter Co. v. Halperin,* 297 F.2d 442, 445 (7th Cir.1961). If the injury is reparable, the proper measure of damages is ordinarily the cost of making the repair, plus the value of the lost use of the property while the owner is necessarily deprived of it by reason of the repair. *See, e.g., Plesniak v.*

---

**3.** The Debtor's motion references contempt in the relief sought. The damage remedies afforded by section 362(h) are neither true sanctions nor based on contempt of court for violation of its orders. No order entered by this Court has been violated. A contempt proceeding in this Court lies under Bankruptcy Rule 9020, but is inappropriate on these facts. This procedural distinction follows earlier Opinions of the Court. *See In re Price,* 103 B.R. 989 (Bankr.N.D.Ill.1989); *In re Prairie Trunk Railway,* 112 B.R. 924 (Bankr. N.D.Ill.1990).

*Wiegand,* 31 Ill.App.3d 923, 932, 335 N.E.2d 131, 138 (1st Dist.1975). There is case law that if the property is worth less after it is repaired than its value before the injury, the measure of the damage is the difference between the market value before the injury in its repaired condition, in addition to the reasonable costs of repairs. *See People v. Tidwell,* 33 Ill.App.3d 232, 237, 338 N.E.2d 113, 117 (1st Dist.1975). Moreover, if personal property is wrongfully detained, the value of the use thereof during the period of wrongful detention can include the appreciation in value caused by the person improperly detaining the property. *See generally* 15 *Illinois Law and Practice,* Damages § 144 (1968 and 1993 Supp.) (collecting cases). The evidence before this Court establishes none of these required elements of proof.

### C. *Attorney's Fees and Costs*

Section 362(h) expressly contemplates the award of reasonable costs and attorney's fees to injured individuals. The Debtor is entitled to an award of his reasonable attorney's fees incurred in the prosecution of this motion. *See, e.g., In re Gault,* 136 B.R. 736, 739 (Bankr.E.D.Tenn.1991). The testimonial evidence is undisputed that the Debtor has incurred and paid $1,000.00 in attorney's fees, plus $160.00 in costs. This was corroborated by the Debtor's attorney's statement of fees pursuant to Bankruptcy Rule 2016(b). *See* Debtor's Exhibit 4, p. 19. The Debtor is therefore awarded reasonable attorney's fees in the sum of $1,000.00. In addition, taxable court costs are awarded in favor of the Debtor and against the Creditors. The Debtor should comply with Local Bankruptcy Rule 417 within the time prescribed thereby for filing his bill of costs in this matter.·

### D. *Punitive Damages*

■ The Court has awarded attorney's fees against the Creditors for their willful violation of the automatic stay. Attorney's fees constitute compensatory damages which make an award of punitive damages appropriate. *See In re Baker,* 140 B.R. 88, 90 (D.Vt.1992). Relevant factors which may be considered in determining whether punitive damages are appropriate for a creditor's violation of the automatic stay are: (1) the

nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. *In re M.J. Shoearama, Inc.,* 137 B.R. 182, 190 (Bankr.W.D.Pa.1992). Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. *Gault,* 136 B.R. at 739 (citing *In re Wagner,* 74 B.R. 898, 903–904 (Bankr.E.D.Pa.1987)).

■ Considering all the evidence, the Court concludes that an award of punitive damages is proper here to appropriately penalize the Creditors for their willful violation of the automatic stay, and to deter them and other creditors who may be similarly inclined in other cases from future similar conduct. The Creditors are familiar with bankruptcy practice and procedure as evidenced by the fact that they took appropriate action in Wilson's earlier case and promptly received relief from the automatic stay. They were represented by the same attorney in that case, they knew the effect of section 362(a), and they could have filed an appropriate motion to modify the automatic stay in this case before proceeding to complete the removal of the Debtor's personal property. The Creditors' actions are sufficiently egregious to warrant an award of punitive damages, notwithstanding the lack of proven actual property damages sustained by the Debtor. Although the Creditors acted properly by utilizing due process of law to evict the Debtor and his family from the Real Property, it was unconscionable without an order lifting the automatic stay to leave the personal property in the front yard overnight in freezing December weather, and then hire Village employees to haul the property in dump trucks and unload it in a storage facility. The Court has no doubt that the personalty was subjected to some damage from such removal, transit and weather.

The Court, however, is mindful that the Creditors were likely facing financial problems of their own as a result of the Buyers' failure to make payments on the underlying Agreement. Although the Court can understand the Creditors' desire to remove the nonpaying Debtor, his family members, and their possessions from the Real Property,

that motive does not excuse the Creditors' willful violation of the automatic stay. The amount of punitive damages awarded should be appropriately tempered by the Debtor's lack of proof of his actual damages. The Creditors' failure to follow section 362(d) should not allow the Debtor to reap an inappropriate windfall award of punitive damages in light of the uncertain and unproven actual damages he sustained. The Court rejects the Debtor's argument that treble damages should be awarded in addition to the claimed, but unproven actual damages sought of $44,000.00.

Courts have awarded punitive damages in various amounts. *See In re Dungey,* 99 B.R. 814 (Bankr.S.D.Ohio 1989) ($100); *In re Bragg,* 56 B.R. 46 (Bankr.M.D.Ala.1985) ($250); *In re Grace,* 85 B.R. 464 (Bankr. S.D.Ohio 1988) (same); *In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987) ($500); *In re Heafitz,* 85 B.R. 274 (Bankr.S.D.N.Y.1988) ($1,000); *In re Depew,* 51 B.R. 1010 (Bankr. E.D.Tenn.1985) (same). More substantial punitive damage awards have been made in other cases for more egregious conduct. *See In re National Marine Sales and Leasing, Inc.,* 79 B.R. 442 (Bankr.W.D.Mo.1987) ($1,500); *In re Jacobs,* 100 B.R. 357 (Bankr. S.D.Ohio 1989) (same); *Mercer v. D.E.F., Inc.,* 48 B.R. 562 (Bankr.D.Minn.1985) ($5,000); *In re Baker,* 140 B.R. 88 (D.Vt. 1992) ($10,000); *In re Fry,* 122 B.R. 427 (Bankr.N.D.Okla.1990) ($25,000); *In re Bair Island Marina & Office Center,* 116 B.R. 180 (Bankr.N.D.Cal.1990) ($50,000); *In re Lile,* 103 B.R. 830 (Bankr.S.D.Tex.1989), *aff'd,* 161 B.R. 788 (S.D.Tex.1993) ($100,000). This wide range of awards shows a divergence of approaches in a sensitive area for careful application of the Court's discretion.

■ The text of section 362(h) provides no guidance on the standards for or appropriate measure of punitive damages to be awarded thereunder. Hence, the Court has considered various Illinois precedents that awarded punitive damages. Illinois law notes that punitive damages may be in proportion to the extent of the injury received, rather than to that actually done, but need not necessarily bear a proportional relation to compensatory damages. *See Gass v.*

*Gamble–Skogmo, Inc.,* 357 F.2d 215, 220–221 (7th Cir.1966), *cert. denied,* 384 U.S. 943, 86 S.Ct. 1464, 16 L.Ed.2d 541 (1966); *Dempsey v. Holiday Utilities Corp.,* 107 Ill.App.3d 467, 476, 63 Ill.Dec. 45, 52–53, 437 N.E.2d 694, 701–702 (5th Dist.1982). The expenses and attorney's fees which a party has incurred may also be considered. *See Ritter v. Ritter,* 381 Ill. 549, 554–555, 46 N.E.2d 41, 44 (1943); *Anvil Inv. Ltd. Partnership v. Thornhill Condominiums, Ltd.,* 85 Ill.App.3d 1108, 1121, 41 Ill.Dec. 147, 156, 407 N.E.2d 645, 654 (1st Dist.1980); *Glass v. Burkett,* 64 Ill. App.3d 676, 683, 21 Ill.Dec. 494, 499, 381 N.E.2d 821, 826 (5th Dist.1978). Given the lack of sufficient evidence upon which to award actual damages for the Debtor's personal property injuries, and in light of the allowed attorney's fees and costs, the Court awards $1,000.00 in punitive damages.

### E. *Sovereign Immunity*

■ The Sheriff contends that *Scott v. O'Grady,* 975 F.2d 366 (7th Cir.1993) is controlling on the defense of sovereign immunity. In *Scott,* tenants who had been forcibly evicted from a building brought a civil rights action against the Sheriff of Cook County and one of his deputies. The Seventh Circuit held that the sheriff and his deputy were not only acting as county officials, but were also acting as an arm of the Illinois state judicial system. Hence, they were entitled to Eleventh Amendment immunity. *Scott* is distinguishable from the case at bar as the relief sought therein was under 42 U.S.C. § 1983, in contrast to a section 362(h) motion. *Scott* is also factually distinct as it involved the eviction incidental to a mortgage foreclosure action. These points, however, are of no legal consequence regarding the applicability of the sovereign immunity defense.

■ *Scott* noted that the Eleventh Amendment bar does not normally extend to counties or their officials and similar municipal corporations when sheriffs and deputies are acting as county officials. 975 F.2d at 370 (citing *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)). The question here is whether the Sheriff was also acting as an agent of the State of Illinois in

which case the Eleventh Amendment applies, or acting merely as a county official, which makes it inapplicable. *See also Hufford v. Rodgers,* 912 F.2d 1338, 1341 (11th Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991). The resolution of the issue depends in part on state law. The Illinois constitution specifically designates sheriffs as county officers. *See* Illinois Constitution Article VII, Section 4(c). *Scott* noted that when a county sheriff performs his duty as principal executive officer or chief law enforcement officer of the county, he acts as a county official and does not get the benefit of the Eleventh Amendment. 975 F.2d at 371. County sheriffs and their deputies, however, sometimes act as agents of the state, when as in this case, they act to enforce orders issued by state courts. Illinois county sheriffs have no discretion in executing state court orders. Rather, they have a statutory duty to serve and execute all orders and judgments of every description that may legally be directed or delivered to them. *See* 55 ILCS 5/3–6019. Thus, Illinois law specifically directs a sheriff to enforce state court orders, and can provide for punishment if he does not.

The State Court Order was directed to the Sheriff, and under 55 ILCS 5/3–6019 and 5/3–6020, the Sheriff and his deputies had a statutory nondiscretionary duty to execute it. Moreover, the State Court Order is a final judgment of the state court to which this Court must give full faith and credit pursuant to 28 U.S.C. § 1738. Recognition of the State Court Order also accommodates the principal of comity between the state and federal judicial systems. The Court finds that the Sheriff and his deputies were not acting solely as county officials. Rather, they were acting as an arm of the Illinois judicial system in executing and enforcing the State Court Order. Consequently, the Sheriff's defense of sovereign immunity is well-founded in this circuit and state.[4]

▓▓▓ Further analysis of the sovereign immunity defense under the applicable provisions of the Bankruptcy Code provides the same result. Section 106 of the Code provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106.

The Sheriff has filed no claims against the Debtor's bankruptcy estate, nor asserted any claim by way of offset against the bankruptcy estate, so the provisions of section 106(a) and (b) for waiver have not been triggered. Moreover, *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) construed section 106(c) as not authorizing a bankruptcy court to issue a money judgment against a state that has not filed a proof of claim in the bankruptcy proceeding. There has been no waiver of sovereign immunity under section 106(c). Accordingly, the Sheriff's motion for judgment pursuant to Bankruptcy Rule 7052 is granted.

## VI.  CONCLUSION

For the foregoing reasons, the Court grants part of the relief requested by the Debtor against the Creditors. Punitive damages are awarded in favor of the Debtor and against the Creditors in the sum of $1,000.00, as well as $1,000.00 for reasonable attorney's fees, plus court costs. The Court grants the

---

4. This approach contrasts with that taken by the Fifth Circuit in *Crane v. Texas,* 759 F.2d 412, 417 (5th Cir.1985), *amended, reh'g denied, en banc,* 766 F.2d 193 (5th Cir.1985), as recently noted in *In re Coats,* 168 B.R. 159, 163 (Bankr.S.D.Tex. 1993).

Sheriff's motion for judgment. All relief against the Sheriff is denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ORDER

For the reasons set forth in a Memorandum Opinion dated the 22nd day of August, 1994, the Court holds that Russell Zimmerman and Cheryl Zimmerman willfully violated the automatic stay of 11 U.S.C. §§ 362(a)(1), (a)(2) and (a)(6) by using agents who were off-duty employees of the Village of Bolingbrook, Illinois, to complete the post-bankruptcy removal and storage of the Debtor's personal property. No actual damages for injury to or wrongful detention of the Debtor's personal property are awarded for failure of proof. Punitive damages, however, are awarded in the sum of $1,000.00, as well as $1,000.00 for the Debtor's reasonable attorney's fees, plus court costs.

The Court grants the motion of Thomas Fitzgerald, Sheriff of Will County, Illinois, for judgment pursuant to Federal Rule of Bankruptcy Procedure 7052. All relief sought against the Sheriff is denied. The Court finds the evidence showed no willful violation of the automatic stay by the Sheriff or his duly authorized deputies who assisted in the pre-petition eviction of the Debtor and his family from the subject real property. Moreover, the Sheriff's assertion of the sovereign immunity defense is well-founded and sustained.